**STATE of Utah, Plaintiff and Respondent,**

v.

**Robert Dean PHELPS, Defendant and Appellant.**

**No. 890241–CA.**

Court of Appeals of Utah.

Oct. 23, 1989.

issues addressed in that opinion.

Gary H. Weight, Provo, for defendant and appellant.

Charlene Barlow, Salt Lake City, for plaintiff and respondent.

Before DAVIDSON, JACKSON and ORME, JJ. (On Law and Motion).

PER CURIAM:

Defendant challenges his convictions of marijuana possession with the intent to distribute and marijuana production. Both offenses are third degree felonies under Utah Code Ann. § 58–37–8(1)(a) (Supp.1989). He was also convicted of failing to purchase drug tax stamps required by Utah Code Ann. § 59–19–103(1)(b) (Supp.1989). Defendant does not dispute the facts as found by the trial judge. Instead, defendant contends that the trial evidence and the judge's findings are insufficient, as a matter of law, to support the conclusion that defendant exercised control and dominion over the growing and harvested marijuana found in the house where he lived.

After our notice of summary disposition under R.Utah Ct.App. 10(e), and a review of the record and the parties' memoranda, we conclude that the issue presented is insubstantial and does not require additional appellate review. As noted, the factual findings by the trial court are not challenged. We reject the conclusions defendant chooses to draw from the evidence and those findings. The evidence is sufficient to sustain the determination that defendant knowingly controlled and exercised dominion over the marijuana sufficient to establish his possession and production of it with the intent to distribute. *State v. Watts*, 750 P.2d 1219, 1224–25 (Utah 1988); *State v. Hansen*, 732 P.2d 127, 131–32 (Utah 1987); *State v. Fox*, 709 P.2d 316, 318–19 (Utah 1985).

Sometime in December 1988, a confidential informant advised the Utah County sheriff's office that marijuana was being grown in a home in the county. The residence was placed under surveillance during the Christmas season. At about this time, defendant was observed on the premises acting as if he was repairing an orange Datsun automobile. On January 25, 1989, defendant was again observed at the residence working on his vehicle. That day, he engaged in a brief conversation with Detectives Harris and Tracey in the yard.

Defendant was observed in and about the home by at least two neighbors on numerous occasions between September 1988 and January 1989. And, when defendant was seen cleaning up the yard around the home with another person, the neighbors noted that defendant remained in the house for long periods of time. Defendant's neighbors considered him to be the resident of the home during that period.

On January 27, 1989, officers found large quantities of marijuana in the garbage which had been discarded from the residence. That same day, the surveillance

officers observed the defendant inside the kitchen area of the home where he appeared to be working between the sink and stove. The officers could also see through the window curtains in the living room and saw one person in that room, but they could not tell if the person was defendant. From that moment until later that day when a search warrant was executed, the residence was kept under constant surveillance and no other person was seen entering or leaving the house.

When officers executed the search warrant at 7:00 p.m. on January 27, 1989, defendant was the only occupant in the home and was arrested in the kitchen. In that kitchen were drug scales, a jar of marijuana stems, and sophisticated distilling equipment apparently in use to produce marijuana wine, all within defendant's immediate reach. In the adjacent living room, eight grocery bags filled with fifteen pounds of dried marijuana sat on a large table in plain view. Also, in plain view on the coffee table were manicure scissors and piles of recently cut marijuana stems.

The first bedroom searched contained a sophisticated hydroponic growing system, with automatic lights and timers, wherein a large number of small marijuana plants were growing. In the second bedroom, numerous larger marijuana plants grew under overhead lights, with fans and humidity detectors. The third bedroom contained a large "mother" marijuana plant, numerous small marijuana plants, and marijuana manicuring "accessories."

Essentially, every room and closet in the house was utilized for marijuana production purposes. There was no sleeping quarters in the house except for a single foldout bed in the living room-dining room area. Defendant's clothes, driver's license, and other personal belongings were found near the bed. A letter addressed to defendant at the residence was found in a hallway closet.

Defendant's argument that all this evidence does not necessarily connect him to the marijuana is wholly without merit. It is true that legal title to the property was not held by defendant and that the person who was purchasing the property on a contract had also been seen on the premises on previous occasions. However, more significantly, at the time of defendant's arrest, there was no evidence that anyone other than defendant then resided in, or had any access to, the interior of the home where all the marijuana production and processing was discovered. Defendant was arrested in a room in the home where the production of marijuana wine appeared to be in current progress. These facts alone materially distinguish defendant's case from the facts relating to the reversal of the Clive Fox conviction in *State v. Fox*, 709 P.2d at 318.

Based upon all the evidence concerning defendant's sole occupancy of the home, his personal effects, the complex production operation, and other record evidence, and upon the reasonable inferences drawn therefrom, the conclusion that defendant had a strong nexus to the marijuana and knowingly participated in its production and possession with the intent to distribute was not clearly erroneous. *State v. Watts*, 750 P.2d at 1225.

Defendant's convictions are affirmed.

DAVIDSON, JACKSON and ORME, JJ., concur.