STATE of Utah, Plaintiff and Appellee,

v.

**Kevin W. GURR, Defendant and Appellant.**

No. 940657–CA.

Court of Appeals of Utah.

Sept. 28, 1995.

---

Michael J. Petro, Springville, for Appellant.

Thomas B. Brunker, J. Frederic Voros, Jr., and Jan Graham, Salt Lake City, for Appellee.

Before ORME, DAVIS and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Kevin W. Gurr appeals his convictions for possession of a controlled substance with intent to distribute, a third degree felony, in violation of Utah Code Ann. § 58-37-8(1)(a)(iv) (Supp.1995) and for possession of a dangerous weapon by a restricted person, a third degree felony, in violation of Utah Code Ann. § 76-10-503 (1995). We have determined that "[t]he facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Utah R.App.P. 29(a)(3). Gurr challenges the trial court's rulings regarding sufficiency of the evidence and his restricted person status. We affirm.

## FACTS

On October 20, 1993, officers from the Utah County Narcotics Enforcement Team executed a valid search warrant on a camp trailer located behind a business at 935 South State Street, Provo, Utah. Gurr had resided in the camp trailer for approximately two years. Around October 1, 1993, Gurr began spending some nights at his girlfriend's, and he moved some of his things into her apartment. However, Gurr was still using the camp trailer as his primary residence, and the majority of his personal belongings remained there.

On the evening officers executed the warrant, Gurr had returned to the trailer to spend the night. Gurr was checking phone messages when the officers knocked and identified themselves. The officers handcuffed Gurr and proceeded to search the ten-by-fourteen-foot trailer. They discovered six baggies of marijuana, finger scales, five one-gallon plastic bags containing marijuana residue, plastic sandwich bags, an empty box of plastic sandwich bags, marijuana leaves strewn over the table, a cellular phone, a twelve-gauge shotgun, and a .22 caliber rifle.

The State charged Gurr with possession of drug paraphernalia within 1000 feet of a church, possession of a controlled substance with intent to distribute within 1000 feet of a church, and possession of a dangerous weapon by a restricted person. Seven years earlier, on May 2, 1986, Gurr had pleaded guilty to burglary, a third degree felony. Because of circumstances surrounding the charge, the trial court in the 1986 case sentenced Gurr as if he had been convicted of a class A misdemeanor. In the present case, the state pursued the charge of possession of a dangerous weapon by a restricted person based on Gurr's earlier burglary conviction.

Gurr waived his right to a jury trial. Following a bench trial, the court found that the first two offenses did not occur in a drug free zone within 1000 feet of a church. The trial court, however, did find Gurr guilty of possession of drug paraphernalia, possession of controlled substance with intent to distribute, and possession of a dangerous weapon by a restricted person. Gurr now appeals his convictions for the latter two offenses.

## ISSUES

Gurr's appeal presents three issues: (1) whether the evidence was sufficient to support the trial court's finding that Gurr possessed marijuana with intent to distribute; (2) whether the evidence was sufficient to support the trial court's finding that Gurr possessed a dangerous weapon; and (3)

whether the trial court properly concluded that Gurr was a restricted person under Utah Code Ann. § 76–10–503 (1995).

## ANALYSIS

### I. Sufficiency of Evidence for Intent to Distribute

■ Gurr first contends that evidence introduced at trial was insufficient to establish intent to distribute marijuana.[1] The State responds that the totality of the evidence and the context in which officers discovered that evidence clearly supports the trial court's finding that Gurr possessed marijuana with intent to distribute.

■ When reviewing sufficiency-of-evidence challenges from criminal bench trials, we "must sustain the trial court's judgment unless it is 'against the clear weight of the evidence.'" *State v. Goodman*, 763 P.2d 786, 786 (Utah 1988) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)). "[W]e will review the record to see if the clear weight of the evidence, not including demeanor and credibility, is contrary to the verdict." *Id.* at 787. After a careful review of the record in the present case, we find the State introduced sufficient evidence upon which the trial court properly could determine that Gurr possessed marijuana with the intent to distribute.

Upon searching Gurr's trailer, narcotics officers discovered evidence strongly suggesting distribution as well as possession of marijuana. The narcotics officers had substantial law enforcement experience with drug trafficking. The officers testified that the one-gallon bags containing marijuana residue could hold up to a half pound of marijuana, that those bags were the kind typically used to package one-half pound quantities of marijuana, and that suppliers of street dealers usually package marijuana in one-half to one-pound quantities. Officers also testified that the sandwich bags and the bags that had been in the empty box were the kind street dealers typically use to package marijuana for street sale and that street dealers typically repackage one-half to one-pound marijuana packages into one-eighth-ounce packages.

The narcotics officers testified that street dealers commonly use finger scales to weigh their product and to measure out quantities of marijuana for sale. Indeed, one officer testified that almost every dealer had finger scales to weigh his product. One officer testified that Gurr admitted that he had received calls on the cellular phone from potential buyers inquiring about purchasing marijuana. Finally, one officer testified that the baggies of marijuana recovered from Gurr's trailer constituted too much for personal use and that a user purchasing the total amount contained in the baggies would purchase it in a single package, not individual baggies.

■ Gurr concedes that he owned the baggies containing marijuana, the one-gallon bags, the finger scales, and the cellular phone. Gurr nevertheless argues that narcotics officers did not recover a sufficient quantity of marijuana from which the trial court could infer the intent to distribute. Generally, triers of fact must infer the intent to distribute from evidence such as the presence of equipment used to package controlled substances for sale and from possession of quantities larger than those typically purchased for personal use.

Although Utah courts have relied on possession of a quantity larger than necessary for personal use as indicative of intent to distribute, they have not exclusively focused on quantity in sustaining convictions. *See, e.g., State v. Hansen*, 710 P.2d 182, 183 (Utah 1985) (relying on quantity and presence of equipment to establish intent to distribute); *State v. Fox*, 709 P.2d 316, 320 (Utah 1985) (relying on quantity and agricultural production of marijuana to establish intent to distribute); *State v. Phelps*, 782 P.2d 196, 198 (Utah App.1989) (relying on large quantity and equipment to process marijuana to establish intent to distribute).

The evidence in the present case strongly suggests that Gurr repackaged large quanti-

---

1. Gurr concedes that he did possess marijuana and admits the four one-eighth-ounce baggies belonged to him.

ties of marijuana into smaller, street-sale quantities. Although Gurr offers alternative explanations for pieces of the evidence, those explanations would require us to view the evidence as individual still frames rather than a whole moving picture. Regardless of the quantity of the controlled substance actually recovered, the totality of the evidence surrounding that contraband must be considered when establishing the intent to distribute.

In sum, Gurr has not shown that the clear weight of evidence contradicts the trial court's ruling that he intended to distribute marijuana. Accordingly, we affirm the trial court's verdict and hold that the evidence presented at trial was sufficient to convict Gurr of possession with intent to distribute.

## II. Sufficiency of Evidence for Possession of Dangerous Weapon

■ Gurr next argues that evidence introduced at trial was insufficient to establish that he possessed a dangerous weapon. The State responds that Gurr had both knowledge of and control over firearms recovered from his camp trailer. Once again, to succeed in his sufficiency-of-evidence challenge, Gurr must demonstrate that the clear weight of evidence contradicts the trial court's verdict that he possessed a dangerous weapon. *State v. Goodman,* 763 P.2d 786, 786–87 (Utah 1988). After reviewing the record, we conclude the evidence is sufficient to sustain the trial court's verdict that Gurr possessed a dangerous weapon.

■ In Utah, persons previously convicted of crimes of violence are prohibited from possessing dangerous weapons. Utah Code Ann. § 76-10-503(1) (1995). To establish possession, the evidence introduced at trial must show that the defendant " 'exercised dominion and control' over the weapon, 'with knowledge of its presence.' " *State v. Banks,* 720 P.2d 1380, 1384 (Utah 1986) (quoting *State v. Bankhead,* 30 Utah 2d 135, 139, 514 P.2d 800, 803 (1973)). When narcotics officers searched the camp trailer they found a twelve-gauge shotgun and a .22 caliber rifle. The shotgun belonged to Tom King who was part owner of the camp trailer and owner of T & T Mechanical behind which the camp

trailer was parked. The rifle belonged to Gurr's father.

Gurr contends that because he did not own the guns he could not possess them. Utah courts previously have held that "ownership does not conclusively determine possession and control of [dangerous weapons]." *State v. Davis,* 711 P.2d 232, 234 (Utah 1985) (per curiam). Gurr further relies on the result in *State v. Banks,* 720 P.2d 1380 (Utah 1986), where the Utah Supreme Court found insufficient evidence to support the conclusion that the defendant possessed a gun discovered in an apartment where the defendant, his wife, and a third party resided. *Id.* at 1384–85. The *Banks* court refused to attribute possession of the gun to the defendant based only on the fact that the police found the gun in an apartment where the defendant lived. Because two others lived in the same apartment and because there was no additional evidence to establish that the defendant "knew the weapon was in the apartment or that he exercised any control over it," *id.,* the *Banks* court held that the defendant did not possess the gun. *Id.* at 1385.

The evidence in the present case, however, establishes a much closer connection between Gurr and the firearms. First and foremost, Gurr admits that he knew both weapons were in the trailer. Thus, the only remaining question is whether Gurr exercised any control over either weapon. Unlike *Banks,* where others also resided in the apartment with the defendant, here, officers discovered the weapons in a trailer in which only Gurr resided. Although employees of T & T Mechanical also used the trailer for coffee breaks and phone calls, Gurr slept there and kept his personal belongings there. In short, Gurr had made the trailer his home, and he lived alone.

Additionally, the evidence that Gurr possessed his father's rifle is especially strong. Although Gurr's father may have owned the rifle, Gurr's father did not have independent access to the camp trailer. Gurr, therefore, exercised some control over the .22 caliber rifle. The rifle alone supports Gurr's conviction for possession of a dangerous weapon.

In sum, Gurr has not shown that the trial court's verdict regarding possession of a dangerous weapon is against the clear weight of the evidence. Accordingly, we must sustain the trial court's verdict and hold that the evidence introduced at trial was sufficient to convict Gurr for possession of a dangerous weapon.

## III. Restricted Person Status

■ Finally, Gurr asserts the trial court incorrectly concluded that he was a restricted person pursuant to Utah Code Ann. § 76–10–503 (1995). · The State responds that the trial court correctly interpreted the statutes that control the question of Gurr's status as a restricted person. The trial court's conclusion about Gurr's status as a restricted person presents a question of law. We therefore review the trial court's statutory interpretation and legal conclusions for correctness, affording no deference. *State v. Shipler*, 869 P.2d 968, 969 (Utah App.1994).

The trial court found that because Gurr possessed a firearm he thereby violated section 76–10–503 of the Utah Criminal Code. That section provides in part, "[a]ny person who has been convicted of any crime of violence under the laws of ... this state .:. may not own or have in his possession or under his custody or control any dangerous weapon as defined in this part." Utah Code Ann. § 76–10–503 (1995). Crimes of violence include burglary. *Id.* § 76–10–501(2)(a). In 1986, Gurr pleaded guilty to burglary, a third degree felony. However, due to the circumstances surrounding the charge, the trial court sentenced him as if he had been convicted of a class A misdemeanor. *See id.* § 76–3–402.[2] Therefore, based on Gurr's previous burglary conviction, the trial court found that Gurr was a restricted person and unable lawfully to possess dangerous weapons.

■ Gurr maintains that, because he was sentenced on the 1986 burglary charge as if he had been convicted of a misdemeanor, he is not a restricted person under section 76–10–503. Gurr's argument thus hinges on the distinction between felony and misdemeanor convictions. Gurr incorrectly asserts that all the offenses enumerated as crimes of violence in section 76–10–501(2)(a) are felonies. Gurr fails to recognize that the list of violent crimes includes "an attempt to commit any of [the enumerated] offenses." Utah Code Ann. § 76–10–501(2)(a) (1995). Criminal attempt to commit several of the offenses listed as crimes of violence is classified as a misdemeanor. *See id.* § 76–4–102. Therefore, crimes of violence may well be misdemeanors.

■ More importantly, section 76–10–503 restricts people from possessing dangerous weapons based on the substance rather than the classification of their criminal history. The statute does not mention classifications for the crimes it lists; rather, the statute describes several enumerated offenses as violent. In other words, crimes of violence are defined as such because of the substance of the offenses. Murder is a violent crime not because it is a felony but because it is a

2. Utah Code Ann. § 76–3–402(1) (1995) provides:

> (1) If the court, having regard to the nature and circumstances of the offense of which the defendant was found guilty and to the history and character of the defendant, concludes it would be unduly harsh to record the conviction as being for that degree of offense established by statute and to sentence the defendant to an alternative normally applicable to that offense, the court may unless otherwise specifically provided by law enter a judgment of conviction for the next lower degree of offense and impose sentence accordingly.

In 1991, the legislature substituted the word "degree" for "category." Thus, although the trial court sentenced Gurr in 1986 pursuant to the previous language, the statute remains essentially the same. We further note that the 1991 amendment does not address the question presented by Gurr's appeal.

This court interpreted pre–1991 § 76–3–402 in *State v. Bagshaw*, 836 P.2d 1384 (Utah App. 1992). In *Bagshaw*, we held that because the pre–1991 sentence reduction statute did not specify a classification of misdemeanor for which defendants convicted of a felony may be sentenced, Bagshaw's conviction must be recorded as a class B misdemeanor pursuant to Utah Code Ann. § 76–3–104(2) (1990). *Bagshaw*, 836 P.2d at 1385–86. Offenses classified as misdemeanors without category specification are class B misdemeanors. *See* Utah Code Ann. § 76–3–104(2) (1995). The 1991 amendments to the sentence reduction statute specified categories of misdemeanors. In short, *Bagshaw* addressed an earlier ambiguity in the sentence reduction statute, and today we address another.

forceful taking of another's life. Similarly, burglary is a violent crime not because it is a felony but because it is a forceful invasion of another's property. Therefore, section 76–10–503 restricts those previously convicted of crimes of violence from possessing dangerous weapons not because they are felons but because they have previously used unlawful force against the person or property of another.

In 1986, when the court sentenced Gurr as if he had been convicted of a misdemeanor, the court merely changed the classification of the offense; it did not change the substance of Gurr's crime. Gurr argues that because there is no statutory classification for misdemeanor burglary he was somehow convicted of something other than burglary. Gurr's argument elevates form, or at least classification, over substance. Section 76–3–402 permits a court to impose sentence for the next lower classification of the offense; it does not permit the court to change the substance of the crime.

For crimes with limited classifications, the statute implicitly allows the court to create a de facto lower classification for the purposes of sentencing. In the present case, the 1986 trial court sentenced Gurr for a class A misdemeanor and created, for the limited purpose of imposing sentence, a de facto misdemeanor classification for burglary. The classification of Gurr's crime changed for purposes of sentencing, but the substance of his offense remained the same.

We previously have observed that "a guilty defendant who is considered worthy of a reduced sentence should receive all the advantages that go with such leniency." *State v. Duncan,* 812 P.2d 60, 64 (Utah App.), *cert. denied,* 826 P.2d 651 (Utah 1991). Our holding today clarifies that observation. Most advantages attendant to a reduced sentence turn on the classification of the offense. Employment opportunities, punishments, and expungement procedures all depend on classifications of crime. *See* Utah Code Ann. § 76–3–203 (1995); *id.* §§ 77–18–9 to –17. Gurr continues to enjoy the advantages of a misdemeanor rather than a felony conviction on his record.

Status as one restricted from possessing dangerous weapons, however, depends on the substance rather than classification of past crimes. Gurr's 1986 conviction was for a crime of violence and therefore Gurr was a restricted person under section 76–10–503. In other words, Gurr's reduced sentence in 1986 did not change his crime from one of violence to one of nonviolence under section 76–10–501(2)(a). It is inconsequential that the reduced sentence was for a misdemeanor rather than a felony.

In sum, we hold that sentence reduction pursuant to Utah Code Ann. § 76–3–402 (1995) lowers the classification of the crime but does not change the substance of the offense for the purposes of section 76–10–501(2)(a). Furthermore, we hold that those restricted from possessing dangerous weapons under section 76–10–503 are restricted once they have been convicted of one or more of the statute's enumerated offenses regardless of how the crime was classified and regardless of the sentence imposed. Therefore, the trial court correctly concluded that based on Gurr's 1986 conviction for burglary he was a restricted person unable to possess dangerous weapons.

## CONCLUSION

The trial court properly found sufficient evidence to convict Gurr of possession of marijuana with intent to distribute and possession of a dangerous weapon. The trial court also correctly determined that, based on his criminal history, Gurr was a restricted person for the purposes of Utah Code Ann. § 76–10–501 (1995). Accordingly, we affirm Gurr's convictions.

ORME, P.J., and DAVIS, Associate P.J., concur.