**STATE of Utah, Plaintiff and Appellee,**

v.

**David Shane McBRIDE, Defendant and Appellant.**

**No. 960324–CA.**

Court of Appeals of Utah.

June 26, 1997.

Lisa J. Remal and Robert K. Heineman, Salt Lake Legal Defender Ass'n, Salt Lake City, for Appellant.

Jan Graham, Atty. Gen., and Barnard N. Madsen, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before DAVIS, P.J., and GREENWOOD and ORME, JJ.

DAVIS, Presiding Judge:

Appellant David Shane McBride challenges the trial court's order of restitution entered against him pursuant to Utah Code Ann. § 78–27–38 (Supp.1996). We affirm.

## BACKGROUND [1]

At some time prior to January 1995, Toby Martinez bought a 1978 Chevrolet Camaro from Craig Allen. Allen signed the Utah Certificate of Title over to Martinez, who also signed the certificate. The sale price and odometer reading were not recorded on the title certificate. Martinez did not register the car or change the title to his name.

On January 29, 1995, Martinez sold the Camaro to Wade Maneotis for $800. Having made a down payment of $200, Maneotis signed an agreement requiring that he pay the remaining $600 by February 6, 1995. Consistent with their signed agreement, Martinez retained the car's title, with the understanding he would give it to Maneotis when he paid the remaining $600. Maneotis assumed possession of the car. Thereafter, Maneotis left the car with an automobile repair company from which it was later stolen. The theft was not reported for several weeks.

On April 15, 1995, Salt Lake City police officers stopped appellant in the stolen Camaro for an equipment violation. Because of registration violations, the Salt Lake Police Department impounded the car and delivered it to an impound yard. *See* Utah Code Ann. § 41–1a–1101 (Supp.1996) (authorizing police impoundment of motor vehicles). As per Utah Code Ann. § 41–1a–1102 (1993), an attempt was made to establish the ownership

---

1. The facts are essentially undisputed and are reproduced here from the trial court's Findings of Fact as supplemented by our review of the record.

of the car. However, the vehicle's identification number was erroneously transcribed, as a result of which neither Martinez nor Maneotis were notified. Unable to locate an owner, the impound lot subsequently sold the car. *See* Utah Code Ann. § 41–1a–1103 (1993) (authorizing sale of impounded vehicles). Maneotis never paid Martinez the outstanding $600 balance pursuant to their agreement, and because the car had been sold, Martinez was unable to recover his car.

Meanwhile, appellant was charged by Information with receiving or transferring a stolen motor vehicle, a second degree felony, in violation of Utah Code Ann. § 41–1a–1316(2) (1993). On October 19, 1995, pursuant to a plea agreement, appellant pleaded guilty to unlawful control over a motor vehicle, or joyriding, a class A misdemeanor, in violation of Utah Code Ann. § 41–1a–1311(1) (1993). On November 21, 1995, Judge Robert Hilder sentenced defendant to 365 days in jail, with 270 days suspended, and twenty-four months of probation. Judge Hilder's order also required appellant to comply with any order of restitution imposed after a hearing before Judge Anne Stirba.

Appellant's restitution hearing was held before Judge Stirba on February 1, 1996. After hearing the testimony of the State's witness (Martinez's live-in girlfriend), the arguments of counsel, and evidence offered by the State, Judge Stirba ordered appellant to pay $600 restitution to Martinez. The State's exhibits, on which the trial court relied, were the handwritten bill of sale signed by both Martinez and Maneotis and the Certificate of Title bearing the signatures of Allen and Martinez. Appellant put on no evidence.

## ISSUES AND STANDARD OF REVIEW

■ Appellant challenges the trial court's restitution order on two grounds. First, appellant questions the reliability and sufficiency of the evidence produced at the restitution hearing. To successfully challenge the sufficiency of the evidence, appellant "must demonstrate that the clear weight of [the] evidence contradicts the trial court's verdict." *State v. Gurr*, 904 P.2d 238, 242 (Utah.Ct. App.1995).

■ Appellant also asserts that the "intervening and superseding negligence of the police in failing to contact the car's owners" relieves him of any liability for any loss resulting from the sale of the impounded Camaro. Generally, "[w]e will not disturb a trial court's order of restitution unless the 'trial court exceeds the authority prescribed by law or abuses its discretion.'" *State v. Robinson*, 860 P.2d 979, 980 (Utah.Ct.App. 1993) (citation omitted). "However, whether or not restitution is proper in this case depends solely upon interpretation of the governing statute, and the 'trial court's interpretation of a statute presents a question of law.'" *State v. Garcia*, 866 P.2d 5, 6 (Utah. Ct.App.1993) (quoting *Ward v. Richfield City*, 798 P.2d 757, 759 (Utah 1990)). "'We accord a lower court's statutory interpretations no particular deference but assess them for correctness, as we do any other conclusion of law.'" *Id.* (quoting *Salt Lake City v. Emerson*, 861 P.2d 443, 445 (Utah.Ct.App. 1993) (citation omitted)).

## ANALYSIS

### Evidentiary Challenges

Appellant challenges the reliability of the evidence presented by the State. Specifically, appellant asserts that "the bill of sale for the vehicle without any foundation from either of the parties to the purported agreement," the certificate of title, and the testimony of Martinez's girlfriend are all unreliable and thus, the trial court's consideration of such evidence violated his right to due process. Rule 1101(b)(3) of the Utah Rules of Evidence provides, in relevant part, that "[t]he rules [of evidence] ... do not apply in the following situations: ... Miscellaneous proceedings for ... sentencing or granting or revocation of probation, issuance of warrants for arrest, criminal summonses and search warrants and proceedings with respect to release on bail or otherwise."

■ In *State v. Starnes*, 841 P.2d 712 (Utah.Ct.App.1992), this court noted that during a restitution hearing "more evidence should be allowed under rule 1101, not less."

*Id.* at 715. "Rule 1101 is intended to loosen the formality of the hearing, not prevent the hearing of evidence." *Id.* Thus, under Rule 1101(b)(3), "[t]he rules of evidence in general, and the rules on hearsay exclusions in particular, are inapplicable in sentencing proceedings." *State v. Sanwick,* 713 P.2d 707, 709 (Utah 1986). Given the supreme court's interpretation of Rule 1101, appellant's challenge to the reliability of the evidence fails.[2]

Next, appellant asserts that the evidence is insufficient to sustain the restitution order imposed by the trial court. Considering the completely marshaled evidence, appellant fails to "demonstrate that the clear weight of [the] evidence contradicts the trial court's verdict." *Gurr,* 904 P.2d at 242. Accordingly, this argument also fails.

### Intervening Police Negligence

Appellant's second challenge to the trial court's restitution order focuses on what appellant characterizes as the "intervening and superseding negligence" of the police which appellant claims was not foreseeable and thus, should cut off any liability "for the damages sustained as a result of this intervening and superseding negligence."

Utah Code Ann. § 76–3–201(1)(d) (Supp. 1996) defines "restitution" as the "full, partial, or nominal payment for pecuniary damages to a victim." Section 76–3–201 defines "victim" as "any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities." *Id.* § 76–3–201(1)(e)(i). "Pecuniary damages" are defined, in relevant part, as "all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and includes the money equivalent of property taken, destroyed, broken, or otherwise harmed." *Id.* § 76–3–201(1)(c). Finally, section 76–3–201(4)(a)(i) states: "When a person is convicted of criminal activity that has resulted in

pecuniary damages . . . the court *shall* order that the defendant make restitution. . . ." (Emphasis added.)

In this case, Martinez clearly suffered damages following appellant's criminal act. Thus, our focus becomes whether Martinez "could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities." *Id.* § 76–3–201(1)(c); *see also State v. Depaoli,* 835 P.2d 162, 163–64 (Utah 1992) (explaining statutory authority to order restitution limited to amount recoverable by victim in civil action against defendant).

In *Depaoli,* the Utah Supreme Court noted that Utah's restitution statute "is nearly identical to an Oregon statute from which it was patterned." *Id.* at 163; *see also State v. Twitchell,* 832 P.2d 866, 869 (Utah.Ct.App. 1992) (acknowledging Oregon restitution statute as "basis for, and substantially similar to Utah's restitution statute" (footnote omitted)). *Compare* Utah Code Ann. § 76–3–201 (Supp.1996) *with* Or.Rev.Stat. §§ 137.103 to .109 (1995). Both the *Depaoli* and *Twitchell* courts analyzed Oregon case law interpreting the Oregon restitution statute, and in turn we do the same.

In *State v. Sellers,* 76 Or.App. 552, 709 P.2d 768 (1985), the defendant was convicted for unauthorized use of a motor vehicle after he was seen driving a van that was stolen from a car dealer the previous day. *See id.* 709 P.2d at 769. The Oregon Court of Appeals presented the facts as follows:

> [On April 22, 1983,] an employe[e] of the car dealer saw the van at a gas station. Defendant was driving. The employe[e] followed the van until it stopped near some railroad tracks in Polk County. He then contacted the police. When police arrived at the scene, defendant was gone. Three other persons were taken into custody. Police mistakenly believed that a fourth person was in the van, fired a tear gas canister through its rear window and damaged the van.

---

**2.** Appellant challenges the legality of the transfer of the vehicle from Allen to Martinez citing "facial infirmities," including lack of notarization, failure to complete the odometer disclosure statement, and Martinez's failure to register the car in his name. We conclude that these issues are without merit and so decline to address them. *See State v. Carter,* 776 P.2d 886, 888–89 (Utah 1989).

*Id.* As part of his sentence, Sellers "was ordered to pay $1,627.66 in restitution for all the damage to the van." *Id.* On appeal, Sellers challenged the restitution amount, claiming that "the court exceeded its statutory authority by ordering him to pay restitution for damage to the van that occurred when he was not present." *Id.* Sellers alleged "the van was not damaged during the time that he drove it but that it was damaged *before* he drove it and damaged again by the police tear gas canister *after* he had departed." *Id.* Thus, he argued, "because the van was not damaged during his 'unauthorized use,' the damage did not *result from* his criminal activity and he should not be ordered to make restitution." *Id.* at 770.

The court set out the definition of "pecuniary damages" in Oregon's restitution statute[3] and noted that "[d]amages to the vehicle which occurred during and after defendant's unauthorized use are 'pecuniary damages' ... because they are special damages that the owner could recover against defendant in an action for trespass or conversion." *Id.* at 770 n. 2. The court then remanded for a determination of those damages.

As in *Sellers,* the record in the case before us reflects that the State presented evidence which would support a civil conversion action against appellant. In *Allred v. Hinkley,* 8 Utah 2d 73, 76, 328 P.2d 726, 728 (1958), the Utah Supreme Court noted that conversion requires "only an intent to exercise dominion or control over the goods inconsistent with the owner's right." *See also Twitchell,* 832 P.2d at 870 (quoting *Allred* definition of conversion in criminal restitution context). In the instant case, appellant was caught driving the stolen car and pleaded guilty to unlawful control thereof. Clearly, he exercised intentional control over the car, inconsistent with its owner's rights.[4]

Appellant asserts that when the police copied the wrong vehicle identification number at the impound lot, in effect precluding notification of the car's owner, their negligence superseded his liability for the conversion. Here, appellant raises two sub issues: (1) whether the intervening negligence of the police supersedes any and all liability he would otherwise have under a conversion theory, and (2) whether the trial court erred by failing to reduce the amount of restitution ordered by the percentage of comparable fault attributable to the police.

### (1) Superseding Negligence

First, appellant argues that the intervening negligence of the police supersedes his liability under a civil conversion theory of recovery. Utah law provides that " 'a more recent negligent act may break the chain of causation and relieve the liability of a prior negligent actor under the proper circumstances.' " *Steffensen v. Smith's Management Corp.,* 820 P.2d 482, 488 (Utah.Ct.App. 1991) (quoting *Godesky v. Provo City Corp.,* 690 P.2d 541, 544 (Utah 1984)), *aff'd,* 862 P.2d 1342 (Utah 1993). "However, if the subsequent negligent act is foreseeable to the prior actor, both acts are concurring causes and the prior actor is not absolved of liability. The issue is whether the subsequent intervening conduct, either criminal or negligent, was reasonably foreseeable." *Id.* (citation omitted). " 'A superseding cause, sufficient to become the proximate cause of the final result and relieve defendant of liability for his original negligence, arises only when an intervening force was unforeseeable and may be described with the benefit of hindsight, as extraordinary.' " *Id.* (quoting *Robertson v. Sixpence Inns of Am., Inc.,* 163 Ariz. 539, 789 P.2d 1040, 1047 (1990) (en banc)).

Again we look to Oregon case law to guide our interpretation of the restitution statute. In *State v. Doty,* 60 Or.App. 297, 653 P.2d

---

**3.** Oregon Revised Statutes § 137.103(2) provides:

"Pecuniary damages" means all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money

equivalent of property taken, destroyed, broken or otherwise harmed....

This section is nearly identical to Utah Code Ann. § 76–3–201(1)(c) (Supp.1996).

**4.** At oral argument, appellant initially conceded that his crime equated to the intentional tort of conversion but later suggested it might be more analogous to the tort of trespass to chattels.

276 (1982), the Oregon Court of Appeals considered a challenge to a restitution order entered in the context of defendant Doty's plea to second degree theft. *See id.* 653 P.2d at 277. Doty admitted that he kicked down the door to the victim's home and stole a pellet gun and a vacuum cleaner. *See id.* However, "[h]e denied taking jewelry or any other items [that the victim reported] missing from the residence and hypothesized that after his entry someone else had entered and taken the other items." *Id.* Noting that Doty did not "seriously dispute the loss of the missing items," the court concluded that, "regardless of whether defendant actually stole the jewelry, the entire loss 'resulted' from his 'criminal activities,' including the admitted kicking in of the victim's door, because it at least created free access to the home for the hypothetical subsequent theft." *Id.* In so holding, the Oregon court employed a "but for" analysis, stating,

> if the loss 'resulted,' in a 'but for' sense, from defendant's criminal activities, then the amount of restitution is determined in a separate evidentiary hearing in which the trier of fact determines, as in a civil case, the money equivalent of the property for the taking or destruction of which the defendant *could* be found civily liable.

*Id.* at 277–78 (citation omitted).[5]

 We believe a modified "but for" test is appropriate in the context of a restitution hearing under section 78–27–38. Aided by the benefit of hindsight, we cannot say that the negligence of the police in transcribing the vehicle identification number was so unforeseeable as to supersede the fault of appellant in causing Martinez's loss. In addition, it is clear that but for appellant's criminal act, which resulted in the impoundment that created the opportunity for the transcription error, Martinez's loss would not have occurred. Accordingly, appellant's intervening and superseding negligence argument fails.

### (2) Comparative Negligence

Appellant's final challenge sounds in comparative negligence, namely, that the trial court failed to reduce his restitution obligation by that portion of the loss owing to the negligence of the police department. Utah's comparative negligence statute, Utah Code Ann. § 78–27–38 (1996), states in relevant part:

> (1) The fault of a person seeking recovery shall not alone bar recovery by that person.
>
> (2) A person seeking recovery may recover from any defendant or group of defendants whose fault, combined with the fault of persons immune from suit, exceeds the fault of the person seeking recovery prior to any reallocation of fault made under Subsection 78–27–39(2).
>
> . . . .
>
> (4) (a) In determining the proportionate fault attributable to each defendant, the fact finder may, and when requested by a party shall, consider the conduct of any person who contributed to the alleged injury regardless of whether the person is a person immune from suit or a defendant in the action and may allocate fault to each person seeking recovery, to each defendant, and to any person immune from suit who contributed to the alleged injury.

*Id.* § 78–27–38(1), (2), (4)(a). Furthermore, Utah Code Ann. § 78–27–40(1) (1996) provides that "the maximum amount for which a defendant may be liable to any person seeking recovery is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant."

Several other states have considered whether comparative negligence is available as a "defense" to conversion, and we look to such cases for additional guidance. In *Broussard v. Lovelace*, 610 So.2d 159, 162 (La.Ct.App.1992), the Louisiana Court of Appeal noted that "[c]onversion is the intention-

---

**5.** Compare *United States v. Vaknin*, 112 F.3d 579, 589–90 (1st Cir.1997), which held that a "modified but for standard of causation is appropriate for restitution under [Victim and Witness Protection Act]. This means ... that the government

must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)."

al tort of wrongfully depriving a person of possession of his property," and upheld "the general principle that comparative fault does not apply in intentional tort cases." Moreover, in *Hebert v. First Guaranty Bank*, 493 So.2d 150 (La.Ct.App.1986), the Louisiana court noted:

> Our research fails to reveal any Louisiana case law applying either contributory negligence or comparative fault in the context of an intentional tort setting. The case law of most jurisdictions does not allow either contributory negligence or comparative fault as a defense to an intentional tort. Wrongful conversion is an intentional tort and recovery therefor is not barred by contributory negligence. Comparative negligence, which has taken the place of contributory negligence in Louisiana, is likewise not applicable to reduce the damages to which the victim of an intentional tort is entitled.

*Id.* at 155 (citations omitted).

Similarly, in *Federal Deposit Insurance Corp. v. Marine National Bank of Jacksonville*, 431 F.2d 341 (5th Cir.1970), it was held that "contributory negligence is not available as a defense in an action sounding in trover and conversion." *Id.* at 344 (citing Restatement (Second) of Torts § 463 (1965)); *see also* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 67, at 477–78 (5th ed. 1984) ("Contributory negligence never has been considered a good defense to an intentional tort ... and it would likewise appear contrary to sound policy to reduce a plaintiff's damages under comparative fault for his 'negligence' in encountering the defendant's deliberately inflicted harm.").

Similarly, Utah courts have declined to extend the defenses of contributory and comparative negligence in the context of other intentional torts. In *Berkeley Bank for Co-*

operatives v. Meibos, 607 P.2d 798 (Utah 1980), the Utah Supreme Court held that contributory negligence was not a bar to recovery in an intentional misrepresentation case. *See id.* at 804; *see also Ferguson v. Jongsma*, 10 Utah 2d 179, 186, 350 P.2d 404, 408 (1960) (holding contributory negligence no defense to willful, wanton, or reckless disregard). Three years later, the court held that "[i]t would have been improper to have given jury instructions on comparative negligence ... in an intentional battery case." *Cruz v. Montoya*, 660 P.2d 723, 728 (Utah 1983), *superseded by statute on other grounds as discussed in National Serv. Indus., Inc. v. B.W. Norton Mfg. Co., Inc.*, 937 P.2d 551, 553–56 (Utah.Ct.App.1997). These cases echo the reasoning of the Restatement of Torts, which provides: "responsibility for harmful consequences should be carried further in the case of one who does an intentionally wrongful act than in the case of one who is merely negligent or is not at fault." Restatement (Second) of Torts § 435 B cmt. a, at 456 (1965).

 Accordingly, we hold that comparative negligence would not be available to appellant in a civil conversion action resulting from his intentional criminal act. Thus, the trial court correctly ordered appellant to pay restitution for the full value of the vehicle, i.e., the $600 dollars remaining on the obligation between Martinez and Maneotis.[6] Affirmed.

GREENWOOD and ORME, JJ., concur.

---

6. Appellant's claim that he is entitled to an offset in an amount equal to the price that the impound lot received from the sale of the car need not be resolved in the restitution order itself, although he may well have a remedy under Utah Code Ann. § 41–1a–1104(2)(a) (1993). *See State Farm Mut. Auto. Ins. Co. v. Northwestern Nat'l Ins. Co.,*

912 P.2d 983, 985 (Utah 1996) (defining subrogation as " 'an equitable doctrine that allows a person or entity which pays the loss or satisfies the claim of another under a legally cognizable obligation or interest to step into the shoes of the other person and assert that person's right' " (citation omitted)).