KELLUM, Judge.
 

 The appellant, Michael James Reeves, entered a guilty plea and was convicted of one count of receiving stolen property in the first degree, a violation of § 13A-8-17, Ala.Code 1975. The court sentenced Reeves to three years’ imprisonment; that sentence was suspended, and Reeves was sentenced to two years’ supervised probation. He was also ordered to pay a $500 fine, a $100 assessment to the crime victims compensation fund, $33,000 in restitution, and all court costs.
 

 The record on appeal indicates the following. Clint Davis, an investigator with the Alabama Department of Agriculture and Industries testified that he had investigated cases of stolen property recovered in Alabama in 2005 following Hurricane Katrina’s devastation of New Orleans and Louisiana. Davis testified that he had received information from investigators in other Alabama counties regarding employees of the Federal Emergency Management Agency transporting stolen property from New Orleans to Alabama. According to Davis, the stolen property consisted of heavy equipment, including automobiles. Davis stated that some of the sto
 
 *551
 
 len property was reported to be in Butler County. Davis testified that while he was investigating the reports, he discovered equipment that had been described as equipment stolen from Louisiana on Cody Sorrells’s property and subsequently arrested Sorrells. Davis testified that the equipment he discovered on Sorrells’s property consisted of several automobiles and trucks that had been dismantled. Following his arrest, Sorrells gave Davis the names of others who had received stolen property from Louisiana, including Reeves. Davis located additional stolen property at Reeves’s house, including a 24-foot enclosed cargo trailer, a race-car frame, several race-car tires, a motor, transmissions, a motorcycle, and various aluminum motor parts. Pictures of the items found at Reeves’s house were admitted into evidence at the hearing. Davis testified that he returned to Louisiana to find the owners of the stolen property and identified those owners as Lonzo Dawson, Loren Lablanc, and David Ragas. Davis testified that most of the property was identified by the owners over the telephone.
 

 Davis testified that Ragas had lost a 24-foot enclosed cargo trailer and a 10-foot pop-up type trailer designed to pull behind a motorcycle. Ragas reportedly valued those items to be worth $20,000, and $10,000, respectively. Davis testified that when he found the 24-foot cargo trailer, he observed “a gash that was down through one of the sides of it.” (R. 63.) Davis testified that he estimated the value of the cargo trailer to be $20,000 at that time and that he valued the pop-up trailer to be worth $5,000. Davis explained that he was able to find other stolen property that belonged to Ragas, including car parts, a ladder, a nail gun, and various other tools, but he testified that he did not assign a value to the property. Davis testified that the property “looked good” and noted that some of the property remained in its original packaging.
 

 Davis testified that he identified Dawson as the owner of the race-car frame, assorted motor parts, and motors that he had found at Reeves’s house. According to Davis, the frame, parts, and motors appeared to have no obvious damage. Davis testified that the items looked like they had been cleaned. Davis stated that he and the Department of Agriculture and Industries assigned a collective value of $80,000 to all the items. Davis testified that Dawson subsequently identified additional property discovered at Reeves’s house as belonging to him, including tools, transmission housings, and other assorted automobile parts. Davis did not assign a value to this property. Davis testified that he believed that the property he recovered from Reeves’s house that belonged to Dawson “looked good.”
 

 Davis testified that after the property was recovered from Reeves’s house, the property was transported to Lowery’s Wrecker Service facility. Davis testified that Ragas and Dawson were subsequently taken to Lowery’s by local law enforcement to view the property on two occasions and that on the second occasion Ragas and Dawson noticed that property they had identified on their first trip to view the property was now missing.
 

 Ragas testified that he evacuated from Louisiana to Houston before Hurricane Katrina made landfall and that he returned three weeks later. Ragas testified that the cargo trailer was at his house when he returned after the hurricane. According to Ragas, the left side of the cargo trailer was split approximately two inches apart at that time, but the contents of the cargo trailer appeared to be untouched. Ragas testified that he had stored numerous items in the cargo trailer, including the
 
 *552
 
 pop-up trailer, two ladders, a zero-radius push lawnmower, a large black box full of drills and other tools, a table saw, a commercial tile saw, and plumbing tools.
 

 Ragas testified that he had purchased the cargo trailer in 2001 for $5,000; he stated it was in “perfect shape.” Ragas testified that he had purchased the cargo trailer from someone who had used it once and who wanted to “get rid” of it. According to Ragas, the cargo trailer was worth approximately $10,000 to $20,000. Ragas testified that in 2003 he had purchased a pop-up trailer for a motorcycle for $5,000. Ragas testified that he had paid approximately $100 for the ladder and had paid approximately $200 for the nail gun.
 

 Ragas testified that he traveled to Alabama two or three times in an attempt to recover his property and that it cost him approximately $200 in gas each time to drive back and forth from Alabama to Louisiana. Ragas testified that, at the time of the restitution hearing, he had regained possession of the cargo trailer. Ragas testified that two anchors, a hood, and a jack had been removed from the cargo trailer; Ragas estimated those items were worth a combined value of $350. At the time of the restitution hearing, Ragas had not taken the cargo trailer for an estimate to repair the damage. Ragas testified that he had to buy four tires for the cargo trailer at an estimated cost of $120 each. Ragas testified that the tires were in good condition before he evacuated in advance of Hurricane Katrina.
 

 Dawson testified that he was forced to evacuate from his house in New Orleans in August 2005 because of Hurricane Katrina. Dawson testified that he returned a week after the hurricane and secured his garage with padlocks. Dawson stated that a race car and race-car parts were being stored in his garage at the time. Dawson had purchased the race car in 1992. Dawson testified that the race car was worth $80,000 and estimated that $700,000 worth of car parts were stored in his garage at the time. According to Dawson, when he returned after Hurricane Katrina to check on his property, most of the items in the garage were unharmed. Dawson testified that the race car was covered in dirt but otherwise undamaged. Dawson left again and subsequently returned to find his property missing.
 

 Dawson identified items found at Reeves’s house that belonged to him, including the race car which had been stripped and the parts removed. Dawson identified a racing seat, seat cover, wire harness, fuel-pump system, miscellaneous hoses, and two bell housings from pictures taken of items recovered during the investigation. Dawson testified that the bell housings were worth $9,000 each. Dawson further identified his race car. Dawson testified that the race car had been stripped of its parts and that all the paint had been removed from the frame. Dawson testified that he had paid $80,000 for the race-car frame and that one could be purchased brand new unpainted for $70,000.
 

 Dawson testified that he had recovered only the frame of the race car at the time of the restitution hearing and that it was not in the same condition as it was when he left it in his garage in New Orleans. Dawson testified that he had attempted to retrieve his remaining property from Lowery’s but that he was informed that it would cost $6,500 to retrieve his property. Dawson explained that when he i’eturned to Lowery’s to try to retrieve the property a second time, 90% of the property was gone. Dawson testified that he later saw some of the parts being auctioned on a Web site. Dawson estimated that his total loss was $280,000.
 

 
 *553
 
 On appeal, Reeves contends that the circuit court erred in ordering him to pay restitution because, he argues, the evidence failed to demonstrate that Reeves’s criminal activity, i.e., receiving stolen property, was the proximate cause of the loss or damage to the victims’ property once it was in the State’s control. Reeves maintains that the State failed to safeguard the victims’ property once it was collected and, therefore, that the State’s actions were an “intervening factor and the proximate cause of the victims’ loss.” (Reeves’s brief, at p. 9.)
 

 Section 15-18-65, Ala.Code 1975, requires all “perpetrators of criminal activity or conduct
 
 ... to fully compensate all victims of such conduct or activity for any pecuniary loss, damage or injury as a direct or indirect result thereof.”
 
 (Emphasis added.) The term “criminal activities” is defined in § 15-18-66(1), Ala.Code 1975, as “[a]ny offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant.” “Pecuniary damages” are defined in § 15-18-66(2), Ala.Code 1975, in pertinent part, as follows:
 

 “All special damages which a person shall recover against the defendant in a civil action arising out of the facts or events constituting the defendant’s criminal activities; the term shall include, but not be limited to the money or other equivalent of property taken, broken, destroyed, or otherwise used or harmed
 

 [[Image here]]
 

 “Before a defendant can be held liable for damages, it must be established that his criminal act was the proximate cause of the injury sustained by the victim.”
 
 Strough v. State,
 
 501 So.2d 488, 491 (Ala.Crim.App.1986). Therefore, under Alabama’s restitution statute, Reeves could be ordered to pay restitution only if one of two conditions existed: (1) his victims suffered any direct or indirect pecuniary losses as a result of the activity for which he has been convicted or, (2) he admitted to other criminal conduct during the proceedings that was the proximate cause of any injuries to the victims.
 
 Lamar v. State,
 
 803 So.2d 576 (Ala.Crim.App.2001). The State has the burden of proving that a defendant’s criminal act was the proximate cause of the victim’s injury before a defendant can be held liable for damages.
 
 Richardson v. State,
 
 603 So.2d 1132 (Ala.Crim.App.1992).
 

 We can find no Alabama caselaw addressing the issue of intervening causation in the context of a criminal-restitution proceeding — specifically, whether the State’s alleged failure to safeguard the victims’ property was an intervening, superseding cause of the victims’ loss. However, our research revealed cases in Ohio and Utah addressing similar issues.
 

 In
 
 State v. Lacey,
 
 (Ms. 2006-CA-115, Nov. 7, 2007) (Ohio Ct.App.2007) (not published in N.E.2d), the appellant was convicted of receiving stolen property, namely, firearms; the trial court ordered the appellant to, among other things, pay $1,000 in restitution. On appeal, the appellant argued that the trial court abused its discretion in ordering restitution for the victim’s firearms because the amount of restitution included restitution for the damages to the firearms that occurred while they were in the custody of the State of Ohio pending trial. The Court of Appeals of Ohio affirmed the trial court’s restitution order, holding:
 

 “R.C. 2929.18(A)(1) grants a trial court authority to order restitution by an offender to a victim in an amount commensurate with the victim’s economic loss....
 

 [[Image here]]
 

 
 *554
 
 “Appellant argues that he is not liable for the restitution because his actions were superceded by the negligent storage of the firearms and/or the prosecutor’s failure to release the firearms. The question then becomes whether these intervening acts so overcome the defendant’s initial criminal behavior that the appellant’s liability is superceded.
 

 “ ‘An intervening cause is one which comes into active operation in producing the result after the negligence of the defendant.’ Prosser,
 
 Law of Torts
 
 (4 Ed.1971), at 271. Therefore, in order to excuse the defendant, an intervening cause must be either a superseding or responsible cause. It is a superseding cause, when it so entirely supersedes the operation of the defendant’s criminal conduct that it alone, without the criminal conduct contributing thereto in the slightest degree, produces the damage. See, 39 Ohio Jurisprudence 2d 543,
 
 Negligence,
 
 Section 38.’
 

 “Furthermore, whether an intervening act breaks the causal connection between the criminal conduct or negligence and injury sustained, depends upon whether the intervening cause was reasonably foreseeable by the one who was guilty of the criminal conduct or negligence. See
 
 R.H. Ma[c]y & Co., Inc. v. Otis Elevator Co.
 
 (1990), 51 Ohio St.3d 108, 554 N.E.2d 1313;
 
 Mor[n]er v. Giul[i]an[o]
 
 (2006) 167 Ohio App.3d 785, 2006-Ohio-2943, 857 N.E.2d 602. Therefore, we conclude that, where a person engages in criminal behavior and that behavior is followed by the negligence of a third person which directly results in damages, the defendant’s earlier criminal conduct may be found to be the proximate cause of the damages if the intervening act could have been reasonably foreseen. Only intervening acts which are not reasonably foreseeable can negate liability.
 

 “In this case, it was the [defendant’s] actions of receiving the stolen property and selling it for a substantial financial gain, which led to the firearms being held as evidence. It is reasonably foreseeable and general practice that evidence is held pending trial. Furthermore, once property is illegally removed from the custody of its owner it is reasonably foreseeable that the property may suffer damage.”
 

 As in
 
 Lacey,
 
 the effect of the state’s purported negligence on the amount of restitution owed was also at issue in
 
 State v. McBride,
 
 940 P.2d 539 (Utah Ct.App.1997). In
 
 McBride,
 
 the defendant was stopped by the police while driving a stolen vehicle. After arresting McBride, the police erroneously transcribed the identification number of the vehicle. As a result, the police were unable to contact Martinez, the owner of the vehicle, and an impound lot subsequently sold the vehicle. Following a hearing, the trial court ordered McBride to pay restitution to Martinez. On appeal, McBride argued that the intervening and superseding negligence of the police in failing to contact the owner of the vehicle relieved him of any liability for any loss resulting from the sale of the impounded vehicle. The Utah court, affirming the trial court’s restitution order, held:
 

 “Utah Code Ann. § 76-3-201(l)(d) (Supp.1996) defines ‘restitution’ as the ‘full, partial, or nominal payment for pecuniary damages to a victim.’ ... ‘Pecuniary damages’ are defined, in relevant part, as ‘all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant’s criminal activities and includes the money equivalent of property taken, destroyed, broken, or otherwise harmed.’
 

 [[Image here]]
 

 
 *555
 
 “... [McBride] argues that the intervening negligence of the police supersedes his liability under a civil conversion theory of recovery. Utah law provides that ‘ “a more recent negligent act may break the chain of causation and relieve the liability of a prior negligent actor under the proper circumstances.” ’
 
 Steffensen v. Smith’s Management Corp.,
 
 820 P.2d 482, 488 (Utah Ct.App.1991) (quoting
 
 Godesky v. Provo City Corp.,
 
 690 P.2d 541, 544 (Utah 1984)), aff'd, 862 P.2d 1342 (Utah 1993). ‘However, if the subsequent negligent act is foreseeable to the prior actor, both acts are concurring causes and the prior actor is not absolved of liability. The issue is whether the subsequent intervening conduct, either criminal or negligent, was reasonably foreseeable.’
 
 Id.
 
 (citation omitted). “‘A superseding cause, sufficient to become the proximate cause of the final result and relieve defendant of liability for his original negligence, arises only when an intervening force was unforeseeable and may be described with the benefit of hindsight, as extraordinary.” ’
 
 Id.
 
 (quoting
 
 Robertson v. Sixpence Inns of Am., Inc.,
 
 163 Ariz. 539, 789 P.2d 1040, 1047 (1990) (en banc)).
 

 [[Image here]]
 

 “We believe a modified ‘but for’ test is appropriate in the context of a restitution hearing. ... Aided by the benefit of hindsight, we cannot say that the negligence of the police in transcribing the vehicle identification number was so unforeseeable as to supersede the fault of [McBride] in causing Martinez’s loss. In addition, it is clear that but for [McBride’s] criminal act, which resulted in the impoundment that created the opportunity for the transcription error, Martinez’s loss would not have occurred. Accordingly, [McBride’s] intervening and superseding negligence argument fails.”
 

 McBride,
 
 940 P.2d at 542-44.
 

 Although not in the context of criminal restitution proceedings, as was the case in
 
 Lacey
 
 and
 
 McBride,
 
 the Alabama Supreme Court has addressed intervening and superseding causation in civil proceedings. In
 
 Alabama Power Co. v. Moore,
 
 899 So.2d 975 (Ala.2004), our Supreme Court explained:
 

 “ ‘ “The proximate cause of an injury is that cause which, in the natural and probable sequence of events, and without the intervention or coming in of some new or independent cause, produces the injury, and without which the injury would not have occurred.” ’
 
 Hicks v. Vulcan Eng’g Co.,
 
 749 So.2d 417, 424 (Ala.1999)(quoting trial court’s jury charge). ‘[I]f a new, independent act breaks the chain of causation, it supersedes the original act, which thus is no longer the proximate cause of the injury.’
 
 Riojas v. Grant County Pub. Util. Dist.,
 
 117 Wash.App. 694, 697, 72 P.3d 1093, 1095 (2003).
 
 ‘[AJn [act] is superseding only if it is unforeseeable. A foreseeable intervening [act] does not break the causal relationship betiveen the defendants’ actions and the plaintiffs’ injuries.’ Kelly v. M. Trigg Enters., Inc.,
 
 605 So.2d 1185, 1190 (Ala.1992).”
 

 899 So.2d at 979 (some emphasis added).
 

 Our Supreme Court’s analysis of intervening causation is applicable in the context of a criminal restitution proceeding to determine whether the State’s failure to safeguard the victims’ property superseded Reeves’s liability for the victims’ losses. A similar analysis was used by the appellate courts in
 
 Lacey
 
 and
 
 McBride,
 
 both of which we find to be persuasive. Therefore, we conclude that where a person
 
 *556
 
 engages in criminal activities and that behavior is followed by the negligence of a third party that directly results in damage, the perpetrator’s criminal conduct may be found to be the proximate cause of the damage if the intervening act could have been reasonably foreseen. Our holding is in keeping with Alabama’s restitution statute, which allows compensation for any pecuniary loss, damage, or injury that is a direct or indirect result of a perpetrator’s criminal activity or conduct. § 15-18-65, Ala.Code 1975.
 

 In the instant case, the evidence presented to the circuit court established that the victims’ property was found at Reeves’s house and that some of the property was not in the same condition as it had been when it was last seen by the victims before the theft. Further, the evidence indicates that the victims’ losses were not all attributable to the loss of property while under the State’s control and while in the possession of Lowery’s. Ragas testified that the cargo trailer was returned to him missing parts that included two anchors, a hood, and a jack. Dawson, who had recovered only the frame of the race car at the time of the restitution hearing, testified that his race car had been stripped of its parts and that the frame had been stripped of paint.
 

 The losses sustained by the victims and the damage to their respective property were not so unforeseeable as to supersede the fault of Reeves in causing the victims’ losses. The State presented evidence from which the circuit court could conclude that the victims suffered both direct and indirect pecuniary losses as a result of Reeves’s criminal activity. “At a restitution hearing, the trial judge need be convinced only by a preponderance of [the] evidence.”
 
 Hagler v. State,
 
 625 So.2d 1190, 1191 (Ala.Crim.App.1993). Given the evidence presented at the restitution hearing, we cannot say that erred in ordering Reeves to pay restitution.
 

 AFFIRMED.
 

 WISE, P.J., and WELCH and WINDOM, JJ., concur.