**Ron PLATTS, individually and as personal representative of the Estate of Gary Scott Platts, Plaintiff and Respondent,**

v.

**PARENTS HELPING PARENTS dba Turnabout; Alan Comins; and John Does I through XXXV, Defendants and Petitioners.**

No. 950352.

Supreme Court of Utah.

Oct. 7, 1997.

J. Bruce Savage, Park City, for plaintiff and respondent.

Jaryl L. Rencher, Salt Lake City, for defendants and petitioners.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

RUSSON, Justice:

This matter is here for review on a writ of certiorari to the court of appeals.

Ron Platts filed an action against Parents Helping Parents dba Turnabout and Alan Comins (collectively, "Turnabout") alleging liability for the suicide death of his son Gary. Platts filed this action in his own behalf and as personal representative of the estate of Gary Scott Platts. Turnabout moved for summary judgment, claiming that it was a "health care provider" under the Utah Health Care Malpractice Act ("Malpractice Act" or "Act") and that Platts had failed to comply with the procedural requirements of that Act before filing suit and therefore the trial court lacked subject matter jurisdiction. The trial court granted the motion. The court of appeals reversed the trial court, holding that Turnabout was not a "health care provider" under the Malpractice Act and, thus, compliance with the procedural requirements was not mandated. The court of appeals remanded the matter to the trial court for further action. We reverse.

## BACKGROUND

In 1989, the juvenile court referred Platts' son Gary to a program at Turnabout as part of his probation due to behavioral and disciplinary problems. Turnabout operated a

treatment program for troubled youths that was licensed by the Utah State Department of Human Services. The contract admitting Gary to Turnabout was signed in June of 1989. It provided that he was to be treated for problems associated with running away, truancy, depression, substance abuse, and feelings of inadequacy. Because of Gary's truancy from the Turnabout program, Turnabout changed his status in February 1990 from day treatment to twenty-four-hour residential treatment, removing Gary from Platts' home and placing him with another family.

On February 27, 1990, Turnabout released Gary to attend school. However, instead of attending school, Gary ran away. Turnabout notified Platts of the situation and advised him to wait for Gary at his house because Gary was likely to return there. On March 4, 1990, Platts returned home and found his son dead. Gary had committed suicide.

On April 5, 1991, Platts filed a civil complaint against Turnabout, alleging that Turnabout was liable for the death of his son. On April 14, 1993, Turnabout moved for summary judgment, claiming that Turnabout was a "health care provider" under the Malpractice Act and that since Platts had failed to comply with the mandatory procedural requirements of that Act before filing suit, the trial court lacked subject matter jurisdiction.

The Act provides that "[n]o malpractice action against a health care provider may be initiated unless and until the plaintiff gives the prospective defendant ... at least ninety days['] prior notice of intent to commence an action," the plaintiff has filed a request for prelitigation panel review within sixty days thereafter, and a panel opinion has been rendered. Utah Code Ann. §§ 78–14–8 to – 12. It further provides that malpractice actions must be brought within two years of discovery of the injury. Utah Code Ann. § 78–14–4.

The trial court granted Turnabout's motion for summary judgment on March 1, 1994, concluding that defendant was indeed a "health care provider" under the Malpractice Act and that because plaintiff had not complied with the prerequisites for bringing a

lawsuit, the court lacked subject matter jurisdiction. Platts appealed.

The court of appeals reversed the lower court, concluding as a matter of law that Turnabout was not a "health care provider," that the procedural requirement of the Malpractice Act did not apply, and that the case was therefore properly before the lower court. In so ruling, the court of appeals applied a correctness standard of review, granting no deference to the trial court. It stated:

> The titles of Turnabout and Mr. Comins were not included among those identified as "health care providers" in section 78–14–3(11), nor are they so similar to those listed as to leave no reasonable doubt as to their status. Thus, we hold that Turnabout and Mr. Comins are not "health care providers"....

*Platts v. Parents Helping Parents,* 897 P.2d 1228, 1232 (Utah.Ct.App.1995).

In reaching this conclusion, the court of appeals stated that the statute was unclear as to intended coverage and therefore the court would "consider the effect a given statutory construction" would have to achieve the purpose of the legislation, i.e., to control rising costs of malpractice insurance. *Id.* at 1231. In doing so, it noted that the legislature identified those it labeled "health care providers" who would come within the protection of the Act and that with the exception of "hospitals" and "clinical laboratory technologists," they were all licensed professionally under title 58. *Id.*

As for the statutory language that includes as "health care providers" "others rendering similar care and services," *see* Utah Code Ann. § 78–14–3(11), the court of appeals stated that it was construing this phrase narrowly to cover the "rare case" where "no reasonable doubt" exists as to a potential defendant's necessary inclusion among those listed as "health care providers." 897 P.2d at 1232. In the case of Turnabout, the court of appeals held that it was not among those specifically listed as "health care providers" nor was it so similar to those so listed as to leave no reasonable doubt as to its status. Furthermore, the court of appeals stated that because it held "as a matter of law" that

Turnabout was not a "health care provider," it need not address Platts' alternative argument that there were disputed issues of fact as to this question. *Id.*

Turnabout argues that the court of appeals erred in interpreting the Malpractice Act to exclude Turnabout from the protections contained therein. Turnabout claims that it rendered care and services similar to those rendered by health care providers explicitly mentioned in the Act and was therefore a "health care provider" as defined by the Act.[1]

Platts responds that the court of appeals' construction of the statute was proper inasmuch as Turnabout was not explicitly listed in the Act, nor was Turnabout similar enough to those explicitly listed to qualify as a "health care provider." Therefore, Platts argues, the trial court had subject matter jurisdiction.

The primary issue before this court is whether Turnabout was a "health care provider" as defined by the Malpractice Act. Because this issue is ultimately dispositive, the remaining issue of whether summary judgment can be affirmed on other grounds need not be addressed.

### STANDARD OF REVIEW

■ When exercising our certiorari jurisdiction, we review the decision of the court of appeals, not of the trial court. *Butterfield v. Okubo,* 831 P.2d 97, 101 n. 2 (Utah 1992). Initially, we must determine whether the court of appeals applied the appropriate standard of review to the trial court's decision. In this case, the court of appeals reviewed for correctness the trial court's determination that Turnabout was a "health care provider" under the Malpractice Act as a matter of law, granting no deference to the trial court's conclusion. The court of appeals stated:

> Because we hold as a matter of law that Turnabout and Mr. Comins are not health care providers, we need not address Mr. Platts' alternative argument that there ex-

isted a disputed issue of material fact as to whether Turnabout and Mr. Comins are health care providers.

*Platts,* 897 P.2d at 1232. However, the issue before the court of appeals was a mixed question of law and fact that required a review of the trial court's application of statutory law to findings of facts. Matters of statutory construction are questions of law that are reviewed for correctness. *State v. Petersen,* 810 P.2d 421, 424 (Utah 1991). Questions of fact are reviewed under the clearly erroneous standard, with deference given to the trial court. *Id.* at 425. The trial court's application of law to the facts is reviewed for abuse of discretion. *State v. Pena,* 869 P.2d 932, 937 (Utah 1994).

### ANALYSIS

■ The Utah Health Care Malpractice Act was enacted in 1976 to control the rising cost of medical malpractice insurance. Utah Code Ann. § 78–14–2. To this end, the statute requires that certain procedural steps be taken before a lawsuit can be filed against a health care provider. Such protections include notice of intent to commence an action, *id.* § 78–14–8, a prelitigation panel review, *id.* § 78–14–12(2), and an abbreviated statute of limitations. *Id.* § 78–14–4(1). An action cannot be brought if these prerequisites are not met. Utah Code Ann. § 78–14–8.

Whether Turnabout is a "health care provider" under the Malpractice Act is of primary importance. If Turnabout is a "health care provider," Platts' suit against Turnabout is barred for failure to comply with the prerequisites of the Act. If Turnabout is not a "health care provider" under the Act, however, Platts will be able to pursue his claim against Turnabout. Therefore, the statutory definition of "health care provider" is vital to the determination of this matter.

The Act defines "health care provider" as follows:

---

1. Turnabout further argues that the distinction on which the court of appeals excluded it from the statute violates the constitutional guarantee of equal protection and, in any case, summary judgment should have been granted due to Platts'

inability to prove any of his claims from the undisputed facts. Because we decide this case on other grounds, it is unnecessary to reach these arguments.

"Health care provider" includes *any person, partnership, association, corporation, or other facility or institution* who causes to be rendered or who renders health care or professional services as a hospital, physician, registered nurse, licensed practical nurse, nurse-midwife, dentist, dental hygienist, optometrist, clinical laboratory technologist, pharmacist, physical therapist, podiatric physician, psychologist, chiropractic physician, naturopathic physician, osteopathic physician, osteopathic physician and surgeon, audiologist, speech language pathologist, clinical social worker, certified social worker, social service worker, marriage and family counselor, practitioner of obstetrics, *or others rendering similar care and services* relating to or arising out of the health needs of persons or groups of persons and officers, employees or agents of any of the above acting in the course and scope of their employment.

Utah Code Ann. § 78–14–3(11) (emphasis added).

■ In matters of statutory construction, "[t]he best evidence of the true intent and purpose of the Legislature in enacting [an] Act is the plain language of the Act." *Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903, 906 (Utah 1984). "[S]tatutory enactments are to be construed as to render all parts thereof relevant and meaningful." *Millett v. Clark Clinic Corp.,* 609 P.2d 934, 936 (Utah 1980). Likewise, we are compelled to give the statutory language meaning and to assume that "each term in the statute was used advisedly ... unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991) (footnote omitted). We will avoid an interpretation which renders portions of, or words in, a statute superfluous or inoperative. *State v. Hunt,* 906 P.2d 311, 312 (Utah 1995).

■ The statute in question is not ambiguous. It clearly identifies certain types of individuals such as physicians, social service workers, registered nurses, audiologists, etc., as "health care providers." But the statute also clearly includes as "health care providers" *"others* rendering similar care and services relating to or arising out of health

needs of persons." Furthermore, it states that "health care providers" include "any person, partnership, association, corporation, or other facility or institution" that renders or causes to be rendered such services. The inclusion of this language in the statute indicates the legislature's intention to include all persons and entities rendering the same or similar care and services as those providers expressly enumerated.

■ The judiciary is obligated to interpret statutes as they are crafted, not to redesign them. However, the court of appeals failed to construe the plain language of the statute as to render all parts relevant and meaningful and to consider that each term of the statute was used advisedly. Instead, it construed the statute so as to render words inoperative. The court of appeals' narrow construction of the inclusive language "others rendering similar care and services" eviscerates, if not eliminates, any effect that language might have. Although the court refers to this language as a "catch-all" phrase, the court's construction of that language is so narrow that the catch-all phrase "catches" only those defendants whose inclusion within the Act leaves "no reasonable doubt." *Platts,* 897 P.2d at 1232. This "no reasonable doubt" standard does not reflect the statutory language upon which it is based. Under this construction, it is difficult to imagine any defendant, other than those explicitly enumerated, that would be included. Indeed, the court of appeals states that it would be a "rare case" when a defendant qualifies as a "health care provider" on the basis of the "catch-all phrase" alone. *Id.* In effect, the language has been rendered meaningless.

The court of appeals justified its narrow interpretation on the ground that it is important for a clear distinction to be made so that a potential plaintiff may know whether a potential defendant is a "health care provider." *Id.* In making this distinction, the court of appeals placed importance on the type of license that a defendant possesses, drawing attention to the fact that nearly all of those listed in the Act are licensed by the Division of Professional Licensing under title 58. Though the court noted two exceptions to

this commonality in the statute, namely, a hospital and a clinical laboratory technologist, it concluded that Turnabout was excluded from the statute because it was not licensed under title 58, but rather was licensed by the Department of Human Services. *Id.* at 1231. However, the statute makes no mention of the status or origin of the license under which a health care provider operates as a determining factor for inclusion within the statute. In fact, such a narrow interpretation would exclude any defendant not licensed under title 58, even if that defendant clearly rendered care or services similar to those rendered by the providers. The court of appeals ignores the plain language of the statute.

We conclude that the statute in question means what it says. All those identified in the statute are "health care providers." All others rendering care and services similar to those so explicitly identified are also "health care providers."

■ In the case before us, Turnabout does not claim to be a "health care provider" because it is explicitly listed in the statute. It does, however, claim to be a "health care provider" because it rendered care and services similar to those listed in the statute. Whether it did indeed qualify as a "health care provider" depends, of course, upon whether the care and services it actually rendered were in fact similar to the care and services rendered by any of those specifically listed in the statute. This requires a factual determination by the trial court as to the care and services rendered by Turnabout, as well as to the care and services rendered by the listed providers to which Turnabout claims similarity. The trial court must then determine whether the said care and services are sufficiently similar as to conclude that Turnabout is a "health care provider." The trial court in this case took no evidence in this regard but summarily concluded that Turnabout was a health care provider. Specifically, the court's order read:

Defendants' motion for summary judgment is granted for the reason set forth in defendants' Memorandum in Support and in Reply thereto, limited however to this Court's determination that defendants are "health care providers" as defined by the Utah Health Care [sic] Malpractice Act, thereby depriving this Court of subject matter jurisdiction.

The court of appeals reversed the trial court and, in doing so, placed undue importance on titles. The court stated:

The titles of Turnabout and Mr. Comins were not included among those identified as "health care providers" in section 78–14–3(11), nor are they so similar to those listed as to leave no reasonable doubt as to their status. Thus we hold that Turnabout and Mr. Comins are not "health care providers"....

*Platts*, 897 P.2d at 1232. However, the statute does not address the similarity of *titles*, but rather the similarity of *care and services*.

It is unclear what undisputed facts the trial court relied upon in its grant of summary judgment wherein it concluded that Turnabout was a "health care provider." Without an adequate basis of undisputed facts, summary judgment is inappropriate. Without an adequate indication as to the undisputed facts that were applied to the law, it is impossible to determine on appeal whether the trial court erred in its application of the law to those facts. Therefore, the court of appeals should have remanded the matter to the trial court to set out an adequate basis of undisputed facts to justify its grant of summary judgment or, if necessary, to hold further proceedings to make adequate factual determinations. Therefore, the court of appeals erred in concluding, as a matter of law and without an undisputed factual basis, that Turnabout was not a "health care provider."

## CONCLUSION

We reverse the court of appeals and direct that court to remand the matter back to the trial court for further proceedings consistent with this opinion.

ZIMMERMAN, C.J., and HOWE and DURHAM, JJ., concur in Justice RUSSON's opinion.

STEWART, Associate C.J., dissents.