2001 UT 34

**Clifford M. HALL, Plaintiff and Appellant,**

v.

**UTAH STATE DEPARTMENT OF CORRECTIONS, Defendant and Appellee.**

**No. 990529.**

Supreme Court of Utah.

April 17, 2001.

---

James E. Bean, South Jordan, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Nancy L. Kemp, Asst. Att'y Gen., Salt Lake City, for defendant.

RUSSON, Associate Chief Justice:

¶ 1 Plaintiff Clifford M. Hall appeals the district court's dismissal of his action brought under the Utah Protection of Public Employees Act, Utah Code Ann. §§ 67–21–1 to –9 (1996),[1] for failure to state a claim pursuant to Utah Rule of Civil Procedure 12(b)(6). We affirm, but do so on a different ground than that relied on by the trial court.

## BACKGROUND

¶ 2 On appeal from a motion to dismiss under Utah Rule of Civil Procedure 12(b)(6), we review the facts only as they are alleged in the complaint. *Lowe v. Sorenson Research Co.*, 779 P.2d 668, 669 (Utah 1989). As a result, we "accept the factual allegations in the complaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff." *Prows v. State*, 822 P.2d 764, 766 (Utah 1991) (citing *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991)).

¶ 3 Clifford Hall ("Hall") worked as an officer for the Utah State Department of Corrections ("Department" or "UDC") from June of 1992 until December of 1995. In 1993, Hall filed a grievance with the Department after he and other officers in his class were demoted in an allegedly unlawful manner from "grade 21" to "grade 20" employees. In 1996, the Department reached a settlement with the affected officers, and Hall received $2489.65 for his claim.

¶ 4 During his tenure at UDC, Hall was working at the Department's Lone Peak facility on the night of April 10, 1995, when an inmate was hazed by other residents at the complex, purportedly with the encouragement and acquiescence of various UDC officers. Hall reported this incident to his superiors, and subsequently spoke out publicly in condemnation of the Department's alleged passive endorsement of this and other hazing episodes.

¶ 5 Later that year, Hall secretly tape-recorded a conversation with a superior officer concerning his disapproval of the UDC. Due to this action, the Department began an investigation into the incident. On December 9, 1995, shortly after the investigation had commenced, Hall resigned from his position with the Department. Approximately four weeks later, on January 3, 1996, the Department mailed Hall a letter advising him that he had resigned pending disciplinary action, that he would not be considered in the future as a potential rehire candidate, and that the Department would provide prospective employers with this information. Since his resignation, Hall has been unable to se-

---

1. Changes to two sections of the Utah Protection of Public Employees Act became effective on May 3, 1999, after entry of the trial court's final order. *See* Utah Code Ann. §§ 67–21–4 & –5 (Supp. 1999). The changes are not relevant to the issues before us.

cure a position in law enforcement, and the Department has allegedly informed inquiring employers that Hall resigned pending disciplinary action.

¶ 6 Following his difficulty in obtaining new employment, Hall filed suit in the Third District Court for Salt Lake County on October 11, 1996, claiming "at least $100,000" in damages under the Utah Protection of Public Employees Act ("Whistleblower Act"), Utah Code Ann. §§ 67–21–1 to –9. The complaint alleged:

> As a result of Hall's good faith communication of information relating to hazings at UDC facilities . . ., Hall has been subjected to adverse action by UDC and its employees, including . . . constructive discharge, verbal threats, and discrimination with respect to Hall's compensation, the terms, conditions and location of his employment, his promotions, immunities and privileges.

The complaint further alleged that following his resignation from the Department, UDC supplied and "continu[es] to supply negative information regarding Hall to prospective employers."

¶ 7 On February 9, 1998, the trial court issued a ruling dismissing the majority of Hall's claims as time-barred under the Whistleblower Act's 180-day statute of limitations. According to the ruling, the only claims remaining were "any continuing supply of negative information to prospective employers, and any continuing verbal threats, which have taken place since the 180-days prior to October 11, 1996, and which are directly related to the plaintiff's whistle blowing."

¶ 8 Subsequently, on March 25, 1998, UDC moved to dismiss Hall's remaining claims pursuant to Utah Rule of Civil Procedure 12(b)(6). In its motion, the Department asserted that it was protected against suit under the Governmental Immunity Act, Utah Code Ann. §§ 63–30–1 to –38 (1997),[2] and that any information it had provided to prospective employers concerning Hall was privileged pursuant to sections 34–32–1, 45–2–3,

and 76–9–506 of the Utah Code. Hall responded that the motion to dismiss should be denied because the court had previously ruled on the issue and because governmental immunity did not apply. On May 20, 1998, the district court denied UDC's motion, finding, among other things, that the issue had already been addressed by the court earlier in the suit's proceedings.

¶ 9 Regardless, on April 20, 1999, the district court reversed itself and granted UDC's motion to dismiss Hall's remaining negative reference and verbal threat claims. The court wrote in its ruling:

> After careful consideration, this Court finds that the State of Utah is immune from [suit] under the circumstances of this case. The State is granted immunity from suit in cases of "abuse of process, libel, slander deceit [and] infliction of mental anguish." Plaintiff's claim of "supplying negative information" is clearly covered under the statute, and therefore fails.

(Citation omitted and second modification in original.)

¶ 10 On appeal, Hall challenges only the district court's April 20, 1999, dismissal of his remaining negative information and verbal threat causes of action. Specifically, Hall contends that governmental immunity does not apply to the claims at issue because the Whistleblower Act creates an exception to the state's otherwise broad protection against suit. Hall further argues that the district court erred when it reversed its May 20, 1998, denial of the Department's motion to dismiss, and that his "negative information" claims may continue because governmental immunity is waived in regard to contractual relationships. In response, UDC asserts that Hall's "remaining claims are too attenuated from his whistleblowing activities to warrant the [Whistleblower] Act's protection"; that even if the statute does apply, the Governmental Immunity Act still precludes liability against the state; that all employment references the Department made con-

---

**2.** Subsequent to Hall's institution of his suit in court, the legislature adopted a number of amendments to the Governmental Immunity Act, including two changes to the statute's notice of

claim provision, Utah Code Ann. § 63–30–12. These changes are immaterial to our analysis in the case at hand and thus do not affect the result.

cerning Hall are privileged;[3] and that it was properly within the trial court's discretion to reverse its earlier ruling by granting UDC's motion to dismiss.

## STANDARD OF REVIEW

¶ 11 A trial court's decision to dismiss a case based on governmental immunity is a determination of law that we afford no deference. *Petersen v. Bd. of Educ.*, 855 P.2d 241, 242 (Utah 1993) (per curiam). As we have noted, "Because the propriety of a 12(b)(6) dismissal is a question of law, we give the trial court's ruling no deference and review it under a correctness standard." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991).[4]

## ANALYSIS

### I. REVERSAL OF THE INITIAL DENIAL OF UDC'S MOTION TO DISMISS

¶ 12 A threshold issue raised by both parties is whether the district court erred in the ruling now before us by reversing its initial decision denying UDC's motion to dismiss. Utah Rule of Civil Procedure 54(b) specifically provides:

[A]ny order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Indeed, "[i]t is settled law that a trial court is free to reassess its decision at any point prior to entry of a final order or judgment." *Ron Shepherd Ins., Inc. v. Shields*, 882 P.2d 650, 654 (Utah 1994). In this case, it is entirely clear that the trial court's initial rejection of UDC's motion to dismiss was not a final adjudication of any sort. On the contrary, the court's denial of the motion preserved Hall's claims, allowing their maintenance in court for nearly another year. Accordingly, we hold that to the extent the district court's dismissal of Hall's claims was correct as a matter of law, the district court did not err by reversing its initial decision to deny the motion.

### II. GOVERNMENTAL IMMUNITY

¶ 13 An examination of plaintiff's complaint reveals that the district court's dismissal of Hall's remaining negative information and verbal threat claims was correct as a matter of law, but not for the reasons cited by the court. In its ruling dismissing Hall's remaining causes of action, the district court noted that Hall had failed to state a claim on which relief could be granted because the Department was protected from suit by the Governmental Immunity Act. Specifically, the court stated, "[T]he State of Utah is immune from [suit] under the circumstances of this case.... Plaintiff's claim of 'supplying negative information' is clearly covered under [section 63–30–10(2) of the Utah Code], and therefore fails."

¶ 14 We have held that the Governmental Immunity Act must be strictly applied. *See Holt v. Utah State Rd. Comm'n*, 30 Utah 2d 4, 6, 511 P.2d 1286, 1288 (1973),

---

3. We do not reach the Department's contention that its communication with Hall's prospective employers was privileged since, as explained *infra*, Hall's failure to properly file notice of claim is dispositive of the case. We also do not address UDC's assertion that Hall's remaining causes of action are "too attenuated" from his whistleblowing activities to state a claim under the Whistleblower Act. This appeal is brought on a motion to dismiss, and we therefore assume all allegations made in the complaint as true. *Prows v. State*, 822 P.2d 764, 766 (Utah 1991) (citing *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991)). Moreover, the Department now "concedes that the Whistleblower Act is applicable."

4. Although both the Department and Hall presented evidence to the district court beyond the scope of the pleadings, we treat the court's ruling as granting a motion to dismiss pursuant to Utah Rule of Civil Procedure 12(b)(6). The trial court gave no indication that it relied in any way on evidence outside the pleadings, and it in fact recognized the impropriety of such evidence for a 12(b)(6) motion in its May 20, 1998, ruling. *See* Utah R. Civ. P. 12(b) ("If ... matters outside the pleading are presented to *and not excluded* by the court, the motion [to dismiss] shall be treated as one for summary judgment ...." (emphasis added)).

overruled in part on other grounds by Colman v. Utah State Land Bd., 795 P.2d 622, 632 (Utah 1990); see also Utah Code Ann. § 63–30–3. As we explained in Epting v. State, the codification of sovereign immunity mandates stringent enforcement, since it is through the Governmental Immunity Act that the "legislature has recognized the necessity of immunity as essential to the protection of the state in rendering the many and ever increasing number of governmental services." 546 P.2d 242, 243 (Utah 1976). The statute itself unambiguously dictates, "Except as may be otherwise provided in this chapter, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function...." Utah Code Ann. § 63–30–3.

¶ 15 At the same time, our primary goal when construing statutes is to evince "the true intent and purpose of the Legislature [as expressed through] the plain language of the Act." Jensen v. Intermountain Health Care, Inc., 679 P.2d 903, 906 (Utah 1984); see, e.g., Salt Lake City v. Salt Lake County, 568 P.2d 738, 741 (Utah 1977); Ralph Child Constr. Co. v. State Tax Comm'n, 12 Utah 2d 53, 58, 362 P.2d 422, 425 (1961). In doing so, we seek "to render all parts thereof relevant and meaningful," Millett v. Clark Clinic Corp., 609 P.2d 934, 936 (Utah 1980), and we accordingly avoid interpretations that will render portions of a statute superfluous or inoperative. Platts v. Parents Helping Parents, 947 P.2d 658, 662 (Utah 1997); State v. Hunt, 906 P.2d 311, 312 (Utah 1995). Consequently, when two statutory provisions conflict in their operation, the provision more specific in application governs over the more general provision. Millett, 609 P.2d at 936.

¶ 16 Here, the question at issue is whether the district court erred by dismissing Hall's remaining Whistleblower Act claims as barred by the Governmental Immunity Act. Indeed, the Governmental Immunity Act does protect the state and its political subdivisions from claims of "abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, or violation of civil rights." Utah Code Ann. § 63–30–10(2). However, the statute further

recognizes that its scope extends only to the grant and waiver of governmental immunity; the Act does not itself serve as the basis for liability or any cause of action. See id. § 63–30–4(1)(c).

¶ 17 In contrast, Hall's negative information and verbal threat claims arise from a specific statutory cause of action created by the Whistleblower Act. That Act establishes "a civil action for appropriate injunctive relief or actual damages, or both," id. § 67–21–4(2), when an employer allegedly has taken "adverse action against an employee because the employee ... communicate[d] in good faith the existence of any waste of public funds, property, or manpower, or a violation or suspected violation of a law, rule, or regulation adopted under the law of this state." Id. § 67–21–3(1)(a). In this case, Hall contends that the Department has provided negative references to his prospective employers and threatened him verbally "[a]s a result of [his] good faith communication of information relating to hazings at UDC facilities." Moreover, the Whistleblower Act explicitly provides that causes of action such as those brought by Hall apply against governmental entities. In defining against whom whistleblower claims may be lodged, the statute states,

"Employer" means the employing state agency or political subdivision of the state. Id. § 67–21–2(4)(a).

¶ 18 Accordingly, we find that the Governmental Immunity Act does not protect the state and its political subdivisions from lawsuits arising under the Whistleblower Act. While the Governmental Immunity Act grants broad, background immunity to the state and its subdivisions in their roles as public servants, the Act also explicitly recognizes that such immunity can be statutorily waived. See id. § 63–30–3(1). Here, the Whistleblower Act has done just that, allowing claims to be brought against an "employing state agency or political subdivision of the state" that has allegedly taken "adverse action" against one of its employees who contends he reported in "good faith ... information relating to [a violation of state law,] hazing at UDC facilities." See id. §§ 67–21–2 to –4. Barring such claims

through governmental immunity would nullify a very specific statutory provision at the expense of preserving a much more general one; it would render the Whistleblower Act's creation of a cause of action entirely inoperative at the expense of preserving absolutely protection from suit that the Governmental Immunity Act expressly contemplates can be waived. Our case law dictates that we avoid such a tradeoff, and we will not make it here. *See Platts*, 947 P.2d at 662; *Hunt*, 906 P.2d at 312; *Millett*, 609 P.2d at 936.

¶ 19 Just as importantly, allowing governmental immunity to bar Whistleblower Act claims would severely undercut the legislature's purpose of enacting the statute. In both its scope and effect, the Whistleblower Act seeks to protect from retribution public employees who report "any waste of public [resources] or a violation or suspected violation of a law, rule, or regulation." Utah Code Ann. § 67–21–3(1)(a). As its primary mechanism of enforcement, the statute creates a cause of action for employees alleging that they have been discharged, threatened, or discriminated against as a result of their whistleblowing. *See id.* §§ 67–21–2(1), 67–21–4. Precluding such suits through governmental immunity would thus prevent the Whistleblower Act from being implemented in exactly the way the legislature anticipated. As a result, such a construction would prevent any real enforcement of the Act. It would deny public employees much of the protection the Act affords them, and it would corrode any incentive to report waste of resources or violations of law.

¶ 20 To be sure, construing the Governmental Immunity Act to prevent whistleblower claims from being brought against the state or its subdivisions would both abdicate a possibility of recourse specifically afforded potential plaintiffs by the legislature, *see Platts*, 947 P.2d at 662, and vitiate the statute's effectiveness. *See Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 906 (Utah 1984). Therefore, we hold that the district court erred in ruling that Hall's remaining negative reference and verbal threat claims were barred by the substantive protection against suit afforded the Department by the Governmental Immunity Act.[5]

## III. NOTICE OF CLAIM

¶ 21 Although we find that the district court erred by dismissing Hall's remaining claims as barred entirely by the Governmental Immunity Act, we uphold the result of the judgment as correct as a matter of law because Hall did not properly comply with the notice of claim requirements of the Act. *White v. Deseelhorst*, 879 P.2d 1371, 1376 (Utah 1994) ("[W]e may affirm the judgment [of a lower court] on any ground, even one not relied upon by the trial court."); *see, e.g., Cache County v. Property Tax Div.*, 922 P.2d 758, 764 (Utah 1996); *Higgins v. Salt Lake County*, 855 P.2d 231, 241 (Utah 1993); *Hill v. Seattle First Nat'l Bank*, 827 P.2d 241, 246 (Utah 1992).

¶ 22 The Governmental Immunity Act clearly requires that where the state may be sued—such as under the Whistleblower Act—potential plaintiffs must provide a formal "notice of claim" to the appropriate governmental official before bringing their action. Specifically, the statute states, "A claim against the state . . . is barred unless notice of claim is filed with the attorney general and the agency concerned within one year after the claim arises. . . ." Utah Code Ann. § 63–30–12. Once a plaintiff's notice of claim is filed, the Act continues to bar its initiation in court until the state either denies the claim in writing or fails to act for ninety days:

> Within ninety days of the filing of a claim the governmental entity or its insurance carrier shall act thereon and notify the claimant in writing of its approval or denial. A claim shall be deemed to have been denied if at the end of the ninety-day period the governmental entity or its insurance carrier has failed to approve or deny the claim.

5. Because our determination that the Whistleblower Act creates a statutory waiver of governmental immunity is dispositive of that issue, we do not reach Hall's contention, raised for the first time on appeal, that sovereign immunity was waived due to the alleged contractual nature of his claims.

*Id.* § 63–30–14. Only after the state has had the opportunity to consider the claim for ninety days is suit against the government allowed. The Act provides, "If the claim is denied, a claimant may institute an action in the district court against the governmental entity or an employee of the entity." *Id.* § 63–30–15(1).

¶ 23 We have consistently and uniformly held that suit may not be brought against the state or its subdivisions unless the requirements of the Governmental Immunity Act are strictly followed. As we stated in *Roosendaal Construction & Mining Corp. v. Holman,* "A prerequisite in pursuing a claim against the State or its officers is a compliance with [the Act's notice provision,] Section 63–30–12...." 28 Utah 2d 396, 398, 503 P.2d 446, 448 (1972). The rationale of this requirement derives naturally from basic principles of sovereign immunity. In discussing an earlier form of the notice of claim provision's applicability to cities, we explained:

> The purpose of our statute is very clear, which is to require every claimant to clearly state all of the elements of his claim to the city council for allowance as a condition precedent to his right to sue the city and recover his damages in an ordinary action. That the state through its lawmaking power has an absolute right to impose such conditions all courts agree. One of the principal objects of the statute is to prevent spurious claims from being paid, and, in order to fully accomplish that purpose, to give the city officials ample opportunity to examine into both the cause and extent of the injury and also to test the good faith of the claimant in presenting the claim.

*Sweet v. Salt Lake City,* 43 Utah 306, 315, 134 P. 1167, 1171 (1913). In other words, where the government grants statutory rights of action against itself, any conditions placed on those rights must be followed precisely. *See Hamilton v. Salt Lake City,* 99 Utah 362, 366–67, 106 P.2d 1028, 1030 (1940).

¶ 24 Consequently, we held in *Thomas E. Jeremy Estate v. Salt Lake City,* 87 Utah 370, 375, 49 P.2d 405, 407 (1935), that a cause of action against the government was barred where a notice of claim was not filed with the appropriate official prior to institution of the suit in court.[6] Likewise, we ruled in *Hamilton,* 99 Utah at 366–67, 106 P.2d at 1030, that the plaintiff's suit was precluded even though she had provided the city notice of her claim, since she had not verified her letter of notice with an oath as was then required by the statute. And in *Yearsley v. Jensen,* 798 P.2d 1127, 1128–29 (Utah 1990), we affirmed the trial court's decision dismissing the plaintiff's suit as time-barred because she had filed her notice of claim one day late.

¶ 25 We have also held that the Governmental Immunity Act's notice of claim requirement is not subject to exception, even if the governmental entity at issue has effective notice of the claim. In *Scarborough v. Granite School District,* for instance, we ruled that the plaintiff's claims against Granite School District were defective for failure to provide notice as required by the statute, despite the fact that the plaintiff had spoken with the principal at the school in question, and the principal had then reported that conversation to district officials. 531 P.2d 480, 482 (Utah 1975). Similarly, in *Varoz v. Sevey,* we found the plaintiff's claims against Salt Lake County barred even though the county had conducted a "comprehensive investigation" into the matter and thus had "actual knowledge of the circumstances" giving rise to the claim. 29 Utah 2d 158, 160, 506 P.2d 435, 436 (Utah 1973), *modified by Lee v. Gaufin,* 867 P.2d 572, 578–79 (Utah 1993) (recognizing a tolling exception to the Governmental Immunity Act for claims brought by minors); *see also Sears v. Southworth,* 563 P.2d 192, 194 (Utah 1977) (applying the notice of claim provision despite the fact "law enforcement officers investigated the accident [at issue] and filed a report").

**6.** While our decisions in *Sweet, Hamilton,* and *Thomas E. Jeremy Estate* do not address the current version of the Governmental Immunity Act, all three construe notice of claim provisions that preceded the Act and that are substantively similar to the provision now in effect. Importantly, as explained above, these cases demonstrate that both before and since enactment of the Governmental Immunity Act, plaintiffs may sue the state and its subdivisions only by complying exactly with the statutory requirements provided to do so.

¶ 26 Here, Hall concedes on appeal that notice of claim was "filed contemporaneous [sic] with the filing of the action ... on the same date," not in advance of his filing suit in the district court as required by the Governmental Immunity Act. By filing notice of claim in such a manner, Hall deprived the state of the opportunity to assess his allegations and to decide, as required by the statute, whether to approve or deny the claim. *See* Utah Code Ann. § 63–30–14. Indeed, without this opportunity the state could be hauled into court at every turn and with no notice at all—even in cases where a claim is wholly frivolous, can be resolved without lengthy deliberation, or is otherwise suited for resolution out of court. Accordingly, we hold that because plaintiffs with claims against the state "may institute an action in the district court" only after their "claim is denied," *id.* § 63–30–15(1), the district court's dismissal of Hall's remaining causes of action was proper since he failed to comply with the Governmental Immunity Act's notice of claim requirements.

## CONCLUSION

¶ 27 Although a trial court may properly reverse itself at any time before entering a final adjudication of all the claims before it, we hold that the district court here erred by ruling that causes of action lodged under the Whistleblower Act are barred by the Governmental Immunity Act. However, because we find as a matter of law that Hall failed to comply with the notice of claim requirements of that Act, we affirm the district court's dismissal of plaintiff's remaining claims.

¶ 28 HOWE, C.J., DURHAM, DURRANT, and WILKINS, JJ., concur in Associate Chief Justice RUSSON's opinion.