*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 40**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

WILLIAM BISSET DEBROK,
*Appellant.*

No. 20240075
Heard May 14, 2025
Filed September 25, 2025

On Certification from the Court of Appeals

Third District Court, Salt Lake County
The Honorable Todd M. Shaughnessy
No. 231909068

Attorneys:

Derek E. Brown, Att'y Gen., Erin Middleton, Asst. Solic. Gen.,
Salt Lake City, for appellee

Nathalie Skibine, Elise Lockwood, Salt Lake City, for appellant

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE HAGEN, and JUSTICE POHLMAN joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 William Debrok pled guilty to two third-degree felonies for engaging in a recurring scheme in which he and a friend stole merchandise from Walmart. As part of his plea agreement, Debrok admitted that Walmart had incurred over $10,000 in damages as a result of this criminal conduct. When the district court addressed restitution, Debrok asked the court to apportion the damages equally between him and his codefendant based on principles of

comparative fault. In other words, Debrok asserted that because he and his codefendant were equally at fault for Walmart's losses, the restitution amount should be divided equally between them. But the district court concluded that precedent from the court of appeals prevented it from doing so. The district court had already ordered Debrok's codefendant to pay the entire amount of damages. And it ordered the same of Debrok, holding both defendants jointly and severally liable for the full restitution amount until it was paid in full.

¶2    The question before us is whether, in a situation like this, a district court can apportion a restitution amount between criminal codefendants based on principles of comparative fault, or whether each defendant must be held jointly and severally liable for the damages the defendant proximately caused. The answer to this question is found in the language of the Crime Victims Restitution Act (Restitution Act or Act), which governs criminal restitution orders. The Restitution Act states that "the court shall order a defendant . . . to pay restitution to all victims . . . for the entire amount of pecuniary damages that are proximately caused to each victim by the criminal conduct of the defendant." UTAH CODE § 77-38b-205(1)(a)(ii).

¶3    We conclude that this provision of the Act requires each defendant to pay restitution for all of the damages the defendant proximately caused, even if those damages overlap with amounts owed by codefendants. It conflicts with comparative fault apportionment and requires joint and several liability when two or more defendants proximately cause the same damages. Accordingly, we affirm the district court's restitution order, which makes Debrok and his codefendant jointly and severally liable for the entire amount of damages until the amount is paid in full.[1]

---

[1] We emphasize that this does not mean that Walmart will be repaid twice. The law generally disfavors double recovery. *See Hexcel Corp. v. Lab. Comm'n*, 2022 UT App 52, ¶ 39, 510 P.3d 310 ("As our supreme court once colorfully pointed out, a plaintiff who prevails against a defendant on a claim of wrongful possession of a cow may not recover both the cow *and* the reasonable value of the cow." (cleaned up)). The defendants are jointly and severally liable only until Walmart receives the total amount of damages owed. Joint and several liability simply ensures that the at-fault parties— not the victim—bear the risk of insolvency.

## BACKGROUND

¶4 Debrok and his codefendant were arrested for a scheme to steal property from Walmart. Working together, Debrok or his codefendant would purchase items from Walmart and place them in a car. While one of the men waited in the car, the other would immediately walk back into the store, grab items identical to the ones they had just bought, and leave without paying for them. If stopped by a Walmart employee, they would simply show the receipt from the earlier transaction as "proof" of purchase. After securing the stolen items in the car, either Debrok or his codefendant would return the stolen items to a different Walmart location for cash or gift cards. The pair pulled off this scheme several times.

¶5 But they were eventually caught and arrested. Debrok pled guilty to two counts of unauthorized possession of property, both third-degree felonies. In the plea agreement, Debrok "agreed to pay restitution, splitting the amount with his codefendant." The parties also agreed that the losses caused by this scheme, and therefore the amount of pecuniary damages owed to Walmart under the Restitution Act, totaled $10,061.32. *See* UTAH CODE § 77-38b-102(19)(a) (defining "[p]ecuniary damages" as "all demonstrable economic injury, losses, and expenses").

¶6 At sentencing, Debrok did not contest the amount of damages or that his participation in the scheme had proximately caused all of the pecuniary damages Walmart had sustained. Rather, he asked that instead of ordering him jointly and severally liable for the full restitution amount, the court split the amount evenly between him and his codefendant according to comparative fault principles. In comparative fault liability, also referred to as comparative negligence, the fact finder allocates the percentage of fault attributable to each defendant and each person seeking recovery, among others, and each defendant is liable for an amount no greater than "the proportion of fault attributed to that defendant."[2] UTAH CODE § 78B-5-818(3), (4). In contrast, joint and several liability renders "each liable party . . . individually responsible for the entire obligation" no matter their level of blameworthiness. *Joint and Several Liability*, BLACK'S LAW

---

[2] Comparative negligence may also preclude recovery for a civil plaintiff if the plaintiff's fault exceeds the fault of others. *See* UTAH CODE § 78B-5-818(2). But that is not at issue here.

DICTIONARY (12th ed. 2024). Debrok suggested to the court that his codefendant had been more at fault because he "tended to be the primary actor with a lot of the[] transactions." But because they had worked together the entire time, Debrok assumed half of the fault and asked that he be required to pay only half of the damages.

¶7    The district court rejected Debrok's request and ordered that he be held jointly and severally liable for the entire restitution amount along with his codefendant. In its order, the district court reasoned that it was bound to apply *State v. McBride*, a case in which the court of appeals rejected a criminal defendant's request to reduce a restitution order according to principles of comparative fault because at the time, comparative negligence was not available in civil actions involving intentional torts. 940 P.2d 539, 545 (Utah Ct. App. 1997), *overruled on other grounds by State v. Ogden*, 2018 UT 8, 416 P.3d 1132. The district court noted that much of *McBride*'s reasoning had been undermined by *Graves v. North Eastern Services, Inc.*, a subsequent civil case interpreting the Liability Reform Act (LRA)—which expanded the scope of Utah's comparative negligence regime—to provide for comparative fault apportionment of intentional tort damages. 2015 UT 28, ¶ 46, 345 P.3d 619. However, the district court concluded it was bound to follow *McBride*'s holding because the case had not been overturned.

¶8    Debrok timely appealed the district court's order. After preliminary briefing, the court of appeals certified the case to us. We have jurisdiction under Utah Code section 78A-3-102(3)(b).

## STANDARD OF REVIEW

¶9    The question before us is whether the Restitution Act mandates joint and several liability among codefendants for damages to a victim that both defendants proximately caused, or whether a sentencing court is free to apply principles of comparative fault in restitution orders. "We review questions of statutory interpretation for correctness." *State v. Ogden*, 2018 UT 8, ¶ 24, 416 P.3d 1132.

## ANALYSIS

¶10  When ordering restitution in this case, the district court rejected Debrok's request that it apportion damages between him and his codefendant, and it held them both jointly and severally liable for the full amount of damages to Walmart. The court concluded that a court of appeals case, *State v. McBride*, required this outcome. (Citing 940 P.2d 539 (Utah Ct. App. 1997).)

4

¶11 Debrok argues that the district court's analysis was wrong. He asserts that *McBride* should not prevent apportionment of the damages here, because that case was effectively abrogated when *Graves v. North Eastern Services, Inc.*, 2015 UT 28, 345 P.3d 619, recognized that the LRA permitted apportionment of damages based on fault in intentional tort cases. With *McBride* out of the way, Debrok asserts that the language of the Restitution Act does not explicitly address how damages in a criminal case should be apportioned. And he argues that we should look to the LRA's comparative fault framework for that answer. *See* UTAH CODE § 78B-5-818(4)(a) ("The fact finder may . . . allocate the percentage or proportion of fault attributable . . . to each defendant . . . for whom there is a factual and legal basis to allocate fault.").

¶12 The State contends that the LRA is irrelevant to determining restitution in a criminal case under the current version of the Restitution Act. It argues that the Restitution Act's plain language is all we need to consider, and that it clearly "makes [Debrok] jointly and severally liable for the entire amount of the victim's damages he proximately caused."

¶13 We first discuss the historical connection between criminal restitution and civil damages in Utah law, and we explain that the holding in *McBride* has been abrogated by changes in the law. Then, we interpret the relevant provisions of the Restitution Act in effect at the time of Debrok's sentencing,[3] and we address whether the

---

[3] As a general rule, "we apply the law as it exists at the time of the event regulated by the law in question." *State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829. With respect to matters of substance, "the parties' primary rights and duties are dictated by the law in effect at the time of their underlying primary conduct." *Id.* ¶ 14. With respect to procedural matters, however, "the relevant underlying conduct is different: the relevant occurrence for such purposes is the underlying procedural act (e.g., filing a motion or seeking an appeal)." *Id.*

When it comes to criminal restitution, generally the version of the Restitution Act in effect at the time of sentencing applies. *See State v. Blake*, 2025 UT 21, ¶ 8 n.2, __P.3d __ (citing *Clark*, 2011 UT 23, ¶¶ 12–14); *see also State v. Garcia*, 2023 UT App 143, ¶ 10 n.3, 540 P.3d 1158 (citing *Clark*, 2011 UT 23, ¶ 13). This is because the district court orders restitution "as part of the sentence imposed," UTAH CODE § 77-38b-205(1)(a), even though, in some cases, the exact

(continued . . .)

Act leaves room to incorporate comparative fault principles from the LRA into criminal restitution orders.

¶14 We ultimately conclude that it does not. As we will explain, unless the parties stipulate otherwise in a plea agreement, the Act requires each defendant to be responsible for the entire amount of damages the defendant's criminal conduct proximately caused a victim. We interpret this provision to preclude comparative fault apportionment of criminal restitution. And we affirm the district court's restitution order on this alternative basis.

## I. *MCBRIDE* AND SUBSEQUENT PRECEDENT

¶15 This case requires us to examine the intersection of criminal restitution and civil damages. The district court concluded that *McBride*'s holding that comparative fault apportionment is not available in criminal restitution orders prevented it from granting Debrok's request that it apportion fault here. *See State v. McBride,* 940 P.2d 539 (Utah Ct. App. 1997), *overruled on other grounds by State v. Ogden*, 2018 UT 8, 416 P.3d 1132. Debrok argues that the court was wrong because *McBride*'s holding is no longer good law. To address the state of this precedent, we discuss the historic connection in Utah between criminal restitution and civil damages, and how that has changed in recent years.

¶16 For many years, criminal restitution in Utah was statutorily tied to the amount of damages "a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities." UTAH CODE § 76–3–201(4)(b) (1979); *id.* § 76–3–201(1)(c) (1996) (same); *id.* § 77-38a-102(6) (2017) (substantively the same). Thus, under earlier

---

restitution amount may be determined after sentencing, *id.* § 77-38b-205(7). However, we acknowledge that we said otherwise in *State v. Sevastopoulos*, and we applied the Restitution Act in effect at the time of the underlying conduct. 2021 UT 70, ¶ 8 n.2, 502 P.3d 290. In light of this inconsistency, we clarify that as a general matter, the Restitution Act in effect at the time of sentencing controls. However, we do not rule out the possibility that in a future case, a party might argue that a particular provision of the Act should be treated differently.

Debrok was sentenced in January 2024. Since that time, the Restitution Act has been amended. Because the recent amendments involved no changes material to our decision, we cite the current version of this statute.

versions of the Restitution Act, this court and the court of appeals applied principles from the civil damages context to criminal restitution, because the Act explicitly connected the two. *See, e.g.*, *State v. Ogden*, 2018 UT 8, ¶¶ 31–40, (interpreting the Restitution Act as requiring "that the same causation standard [i.e. proximate cause] apply in a restitution hearing that would apply in a parallel civil action"); *State v. Grant*, 2021 UT App 104, ¶ 29, 499 P.3d 176 (stating that "the same proximate cause standard ordinarily applied in civil cases is applied in the restitution context" (cleaned up)).

¶17 In *McBride*, the court of appeals concluded that the criminal restitution order in that case could not be apportioned based on comparative negligence principles. 940 P.2d at 545. At the time, Utah's comparative negligence statute allowed a defendant to reduce the damages owed proportionally, according to the percentage of fault attributed to others, including the victim. *Id.* at 544. But up to that point, the defense of comparative negligence had been allowed only when a civil defendant acted negligently. *Id.* at 544–45. In analyzing the restitution order in that case with reference to civil damages, the court of appeals concluded that because "Utah courts have declined to extend the defense[] of . . . comparative negligence in the context of other intentional torts," *id.* at 545, it followed that the damages caused by intentional criminal conduct were also not subject to comparative fault apportionment, *id.* ("[W]e hold that comparative negligence would not be available to appellant in a civil conversion action resulting from his intentional criminal act. Thus, the trial court correctly ordered appellant to pay restitution for the full value of the vehicle . . . ."). Here, the district court reasoned it was "bound to follow [*McBride*'s] holding until it is reversed."

¶18 In a subsequent case, *Graves v. North Eastern Services, Inc.*, this court abrogated *McBride*'s underlying premise when we interpreted the LRA to "provide[] for allocation of responsibility for intentionally tortious conduct." 2015 UT 28, ¶¶ 45–46, 345 P.3d 619. *Graves* was a civil case that did not involve criminal restitution. One of the questions before this court was whether the LRA's "comparative negligence regime" applied to intentional torts. *Id.* In answering this question, we discussed the establishment and expansion of comparative negligence in Utah statutory law. *Id.* ¶¶ 44–45. We observed that in 1973, the legislature had replaced

the common law defense of contributory negligence[4] with a "comparative negligence regime." *Id.* ¶ 44 (citing Utah Comparative Negligence Act, 1973 Utah Laws 710–12). This statute was "subsequently revised and extended by the Liability Reform Act of 1986, which maintained the comparative liability regime while extending its scope." *Id.* (citing Liability Reform Act, 1986 Utah Laws 470). We explained, "Although the governing statutory regime has been in place for decades, this court has not yet had occasion to make a definitive pronouncement on the question presented by this case—whether our comparative negligence regime provides for allocation of responsibility for intentionally tortious conduct." *Id.* ¶ 45. We answered that question in the affirmative, reasoning that "the broad, categorical terms of the Liability Reform Act, as informed by the history and evolution of our statutory scheme," compelled that conclusion. *Id.* ¶ 46.

¶19 Although *Graves* was interpreting the LRA and did not mention the Restitution Act, it undermined the premise of the court of appeals' holding in *McBride*. *Graves* made clear that comparative fault apportionment was available in intentional torts. So, in calculating a restitution order in a criminal case according to the amount "a person could recover against the defendant *in a civil action*," it was no longer clear that a court could not apportion fault because it could not do so in an intentional tort action. UTAH CODE § 76–3–201(1)(c) (1996) (emphasis added). Accordingly, we agree with Debrok that *Graves* abrogated *McBride*. So *McBride* does not impact the outcome here.

---

[4] Under the common law defense of contributory negligence, a plaintiff was barred from recovery if "the plaintiff committed a negligent act or omission and . . . such negligent act proximately contributed to causing the injury." *Johnson v. Lewis,* 240 P.2d 498, 501 (Utah 1952); *see also Contributory Negligence* in *Negligence*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "contributory negligence" as "[a] plaintiff's own negligence that played a part in causing the plaintiff's injury and that is significant enough (in a few jurisdictions) to bar the plaintiff from recovering damages"). Nearly all states, including Utah, have now statutorily displaced the common law defense of contributory negligence with some form of comparative negligence, in which a plaintiff may recover as long as the plaintiff's fault does not exceed the fault of others. *See* UTAH CODE § 78B-5-818(2). Utah's current comparative negligence regime is outlined in the LRA. *See generally id.* §§ 78B-5-817 to -821.

¶20 However, the landscape of criminal restitution and its relation to civil liability has changed significantly since *Graves*. In the last few years, the legislature has made changes to the Act that appear to have disconnected criminal restitution, at least to some degree, from the civil damages framework.

¶21 In 2021, the legislature removed from the Restitution Act the language that had historically connected criminal restitution to civil damages. Where prior versions of the Act had defined the damages available to a victim in a criminal case by referencing civil damages, *see, e.g.*, UTAH CODE § 76-3-201(4)(b) (1979); *id.* § 76-3-201(1)(c) (1996); *id.* § 77-38a-102(6) (2017), the 2021 amendment defined pecuniary damages as "all demonstrable economic injury, losses, and expenses regardless of whether the economic injury, losses, and expenses have yet been incurred," Criminal Justice Modifications, H.B. 260 § 90, 2021 Leg., Gen. Sess. (Utah 2021) (available at https://le.utah.gov/~2021/bills/static/HB0260.html); UTAH CODE § 77-38b-102(19)(a).

¶22 At the same time, the legislature made other amendments to the Act to require that criminal defendants be held liable for the entire amount of damages they had proximately caused. UTAH CODE § 77-38b-205(1)(a). Before 2021, the Act required courts to determine "complete restitution," which was the restitution necessary to compensate a victim for all losses caused by the defendant. *State v. Laycock*, 2009 UT 53, ¶¶ 20, 23, 214 P.3d 104; *see also* UTAH CODE § 77-38a-302(2) (2020). But the Act did not require courts "to order a defendant to pay complete restitution as part of the criminal sentence." *Laycock*, 2009 UT 53, ¶ 23. Instead, in setting what the Act referred to as "court-ordered restitution," courts could order that something less than complete restitution be paid, taking into consideration "the defendant's financial resources, other obligations, the rehabilitative effect, and other circumstances." *Ogden*, 2018 UT 8, ¶ 28 (cleaned up); *see also* UTAH CODE § 77-38a-302(5)(c) (2020).

¶23 Since 2021, the distinction between complete and court-ordered restitution, along with the provisions requiring a sentencing court to consider the defendant's ability to pay and other circumstances relevant to restitution, have been removed. *See generally* UTAH CODE § 77-38b-205. These changes were made before Debrok's sentencing. And they remain in the current version of the Restitution Act. *See id.* §§ 77-38b-101 to -402.

¶24 Despite these changes to the law since *McBride*, in its order requiring that Debrok be jointly and severally liable, the district court reasoned that it was bound to apply *McBride*'s ultimate outcome because the case had not been explicitly overturned. We take this opportunity to observe that the district court had more freedom to interpret the law than it may have realized. While a district court is bound by appellate precedent, it is free to conclude that appellate precedent no longer applies where the relevant statutes have changed. *See State v. Robinson*, 2023 UT 25, ¶ 24, 540 P.3d 614 (noting that because of the substantive changes to the governing rule, appellate caselaw interpreting a prior version of the rule "does not govern"). Such is the case here.

¶25 There have been two material changes to the law since *McBride*. First, *Graves* recognized that the LRA had abrogated the rule that comparative fault did not apply to intentional torts. *See supra* ¶¶ 18–19. Accordingly, for a period of time it was an open question whether comparative fault was available in criminal restitution. *See State v. Oliver,* 2018 UT App 101, ¶ 43, 427 P.3d 495 ("The question of whether concepts of comparative fault apply in the restitution context—and whether the civil law's abolition of joint and several liability should be imported into the restitution arena—is an interesting and multifaceted one that has not yet been answered by Utah's appellate courts."); *Ogden,* 2018 UT 8, ¶ 32 n.7 ("We do not decide whether the Liability Reform Act has any place in restitution proceedings because Ogden did not preserve the argument below."); *Grant*, 2021 UT App 104, ¶ 27 ("We accept the parties' agreement, and thus we assume, without deciding, that comparative fault principles apply to restitution proceedings."); *State v. Calata,* 2022 UT App 127, ¶ 31, 521 P.3d 920 (applying the pre-2021 Restitution Act and noting that "Utah appellate courts have not addressed whether the causation language in the Restitution Act should be interpreted to allow apportioning fault or whether the LRA applies in this context").

¶26 But then, the Restitution Act was amended to no longer reference civil damages, and to require that a defendant compensate a victim for the entire amount of damages proximately caused by the defendant's conduct. *See supra* ¶¶ 22–23. Considering these substantive changes to the Act, a district court would not violate the doctrine of stare decisis by recognizing that *McBride* no longer applies because it does not speak to the current version of the Act.

¶27 However, we do not mean to say that every significant change to the Restitution Act in 2021 necessarily abrogates all appellate precedent related to criminal restitution. Whether a particular precedent applies must be determined by considering the basis for the precedent and comparing the respective versions of the Act. In this case, we conclude that *McBride* has been abrogated by changes in the law. We now turn to the relevant provisions of the Restitution Act in effect at the time of Debrok's sentencing.

## II. THE RESTITUTION ACT

¶28 Despite the Act's recent disconnection from civil damages, Debrok argues that sentencing courts should, or at least *can*, apply comparative fault principles when crafting restitution orders in multi-defendant cases. He first posits that the Restitution Act itself does not speak to whether restitution can be apportioned. And because the Act is silent with respect to apportionment, he reasons that the LRA should be applied to fill the gap.

¶29 As we have discussed, the LRA establishes an extensive "comparative liability regime" in the tort context. *Graves v. N. E. Servs., Inc.*, 2015 UT 28, ¶ 44, 345 P.3d 619. But Debrok argues that it should also apply to criminal restitution because criminal defendants who cause pecuniary damages to victims fit within the scope of the LRA. The LRA states that "No defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributed to that defendant" by the fact finder. UTAH CODE § 78B-5-818(3).

¶30 And it defines "defendant" and "fault" broadly. "Defendant" is defined as "a person . . . who is claimed to be liable because of fault to any person seeking recovery." *Id.* § 78B-5-817(1). And "fault" is defined as "any actionable breach of legal duty, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, comparative negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification, or abuse of a product." *Id.* § 78B-5-817(2).

¶31 Debrok argues that he and his conduct fall within these broad definitions of the LRA. He contends that the LRA's definition of "fault" includes his criminal conduct because it was a "breach of legal duty" that caused damages to Walmart. *Id.* And he argues that he is a "defendant" for purposes of the LRA because he is a person

who is claimed to be liable because of fault to Walmart. *Id.* § 78B-5-817(1). Consequently, he reasons that the comparative fault framework outlined in the LRA should apply to his restitution order and he should be responsible for only half of the damages he and his codefendant proximately caused Walmart.

¶32  But Debrok's argument stumbles because his premise is incorrect. The Restitution Act is not silent as to how damages should be apportioned. True, it does not contain any provision that expressly discusses apportionment. But that is likely because it does not contemplate it. The Act states in relevant part:

> (1)(a) If a defendant is convicted, . . . the court shall order a defendant . . . to pay restitution to all victims:
>
> > (i) in accordance with the terms of any plea agreement in the case;[5] or
> >
> > (ii) *for the entire amount of pecuniary damages that are proximately caused to each victim by the criminal conduct of the defendant.*

*Id.* § 77-38b-205(1)(a) (emphasis added).

¶33  "When interpreting a statute, our primary objective is to ascertain the intent of the legislature." *McKitrick v. Gibson*, 2021 UT 48, ¶ 19, 496 P.3d 147 (cleaned up). "Because the best evidence of the legislature's intent is the plain language of the statute itself, we look first to the statutory text." *Id.* (cleaned up). Two canons of interpretation are particularly useful in this context.

¶34  First, it is a "settled rule of statutory construction" that "a more specific statute governs instead of a more general statute."[6] *Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 336 (Utah 1997) (cleaned up). And so, when it comes to deciding how to apportion damages in criminal restitution orders, the Restitution Act—which was specifically designed by the legislature to govern criminal

---

[5] Neither party has argued that subsection 205(1)(a)(i) impacts the restitution order in this case, so we do not address it.

[6] The "specific over the general" canon comes in at least two forms: (1) a specific *provision* controls over a general provision, *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958, and (2) a more specific *statute* controls over a general statute, *Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 336 (Utah 1997). Here, the latter applies.

restitution orders—is a closer fit than the LRA—which is "all about tort law." *Graves*, 2015 UT 28, ¶ 71 n.10.

¶35  Second, when looking at the statute's plain language we "presume that the legislature used each word advisedly." *State v. Hatfield*, 2020 UT 1, ¶ 16, 462 P.3d 330 (cleaned up). The term "entire amount" is not defined in the Restitution Act. *See generally* UTAH CODE §§ 77-38b-101 to -402. But its plain meaning is straightforward. "Entire" means "whole" or "having no element or part left out." *Entire*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/entire (last visited Aug. 27, 2025). Used in this context, the plain meaning of the phrase "entire amount" indicates that the legislature intended criminal defendants to pay restitution for the whole or complete amount of damages that their criminal conduct proximately caused.

¶36 And although the Act does not specifically address apportionment, the only viable reading of the language requiring a defendant to pay the "*entire amount* of pecuniary damages that are proximately caused to each victim *by the criminal conduct of the defendant*," UTAH CODE § 77-38b-205(1)(a)(ii) (emphases added), is that codefendants responsible for the same pecuniary damages must both be held liable for the full amount. Allowing Debrok to split the amount of pecuniary damages with his codefendant would run contrary to the text of the Restitution Act because then Debrok would not be responsible for the "entire amount of pecuniary damages . . . proximately caused . . . by [his] criminal conduct." *Id.*

¶37 Our confidence in this reading of section 205(1)(a) is strengthened when viewed in light of other portions of the Restitution Act. Later in the Act, the legislature directed that when "determining the amount of pecuniary damages . . . the court shall consider all relevant facts to establish an amount that *fully compensates* a victim for all pecuniary damages proximately caused by the criminal conduct of the defendant." *Id.* § 77-38b-205(2)(a) (emphasis added). Reading section 205(1)(a) of the Restitution Act to require joint and several liability is consistent with the legislature's express goal of "fully compensat[ing]" crime victims because it places the risk that a particular criminal defendant is insolvent on the codefendants rather than on the crime victim. *See id.*

¶38   Thus, we conclude that the language of the Restitution Act itself answers in the negative the question of whether criminal restitution can be apportioned among codefendants.[7]

## CONCLUSION

¶39 The Restitution Act requires that defendants pay the "entire amount of pecuniary damages that are proximately caused . . . by the criminal conduct of the defendant." UTAH CODE § 77-38b-205(1)(a). This language requires joint and several liability among codefendants who have each proximately caused the same damages to a victim. Accordingly, we affirm on this alternative basis the district court's order that Debrok be "jointly and severally liable for the entire amount of restitution with his codefendant."

---

[7] We recognize that the district court rested its decision on stare decisis grounds—not on the text of the Restitution Act. However, an appellate court can affirm a judgment on any ground apparent on the record. *Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225 (noting that an appellate court may affirm a judgment "if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action"(cleaned up)).